**NEAL, Plaintiff, v. NEAL, Defendant.**

Common Pleas Court, Summit County.

No. 155970.   Decided January 27, 1949.

Newcomber & Newcomber, Bryan, for defendant.
Carl Myers, Akron, for plaintiff.

## OPINION

By EMMONS, J.:

This cause came on to be heard upon the issues raised by the plaintiff's petition for divorce and alimony, the answer of the defendant, and the reply to the answer, and upon trial being duly had the Court finds, after a consideration of all the evidence, that on August the 10th, 1945, the defendant herein filed a divorce action at Bryan, Ohio, against this plaintiff, and that on October the 25th, 1945, the Court of Common Pleas refused the plaintiff in that case, Stanley Neal, a divorce.

Thereafter, on October 30th, 1945, the plaintiff herein filed an action for alimony only in Williams County, Ohio, and on February 25th, 1946, a judgment awarding permanent alimony to the plaintiff was entered in the Common Pleas Court of Williams County, Ohio, and that this matter was appealed by the defendant, and on July the 28th, 1946, the Court of Appeals affirmed the judgment of the Common Pleas Court awarding permanent alimony to the plaintiff in the sum of Sixty Dollars per month and one-half of the money realized from the sale of their furniture.

The Court further finds that on May 3, 1946, the plaintiff herein filed this divorce action in Summit County, Ohio; that service by publication was had upon the defendant, who at that time was in Nevada, and that service by publication was

completed on June the 14th, 1946. Thereafter the defendant came back to Ohio and personal service was had upon him October the 15th, 1946.

That on or about March the 1st, 1946, the defendant herein went west, and later arrived in Reno, Nevada, and stayed there until July 10th, 1946, and while there he filed his petition for divorce against this plaintiff in Washoe County, Nevada, on or about May the 18th, 1946, getting service by publication upon this plaintiff, and on July 3rd, 1946, was granted a divorce against this plaintiff at Reno, Nevada.

The first question for the Court's consideration is whether the Court granting the divorce in Reno, Nevada, had jurisdiction over the subject matter so as to make that divorce valid.

To determine this question it is necessary to conclude what the status of the defendant was at the time he procured the divorce in Nevada.

Shortly after the defendant was denied his divorce on his petition he told his wife that he would get a divorce from her if he had to go to Reno to get it, and thereafter he did go to Reno and on or about May 18th, 1946, filed a divorce action against her and had her served by publication.

Under the Federal Constitution, the State of Ohio gives full faith and credit to the judgments or decrees rendered by courts of a foreign state, and therefore such a decree cannot be impeached by this Court unless, however, this Court finds that the Nevada court did not have jurisdiction over the subject matter, and therefore the question of jurisdiction is one that is always open to inquiry by the courts of this state, and if the Court concludes that the foreign court had no jurisdiction to render the divorce then that proceedings becomes void ab initio, being a nullity the full faith and credit clause of the constitution does not apply.

It is well established in Ohio that in order for the court of another state to acquire such jurisdiction of the subject matter in divorce proceedings as to entitle a judgment rendered therein to recognition by the courts of Ohio it is essential that either or both parties have a bona fide domiciliary residence in such state.

As a general rule, the residence of a person in another state for the sole purpose of conferring jurisdiction in a divorce proceedings will not be recognized as valid. (See Jones v. Jones, 17 N. P. N. S., page 456.)·

It has been held that where parties are residents of this state and one of them removes to and resides in another state

for the sole purpose of maintaining an action against the other for divorce, such residence, not being bona fide, is not sufficient to confer jurisdiction upon the courts of such foreign states and will be disregarded by the Ohio courts.

The facts reveal that shortly after the defendant herein told his wife that he would get a divorce if he had to go to Reno, he did leave for Reno where he filed his divorce action against this plaintiff on May the 18th, 1946.

The circumstances that existed at the time he left were ably presented by plaintiff's counsel in his brief, a part of which facts are as follows:

1. Neal, the defendant, left an agent to carry on his business while he was away, and this agent was a lady that lived across the street and her authority was only to make collections of premiums.

2. Neal got an Ohio driver's license in March, 1946, just before he left the state.

3. By his own testimony the defendant was gone from the state less than four months.

4. He did not take his minor son with him when he left Ohio although his son was living with him at that time.

5. He made temporary arrangements for his son's room, food, clothes while he was away by informing the various business people to allow his son to charge various items and that he would take care of them.

6. The defendant kept his own hotel room, which was in the Allen Hotel, Montpelier, Ohio.

7. He told his wife that he would get a divorce if he had to go to Reno to get it.

8. He did not take the woman with whom he had been associating along with him to Nevada.

9. He left pictures of his father and mother, family heirlooms, clothing, fishing tackle, safe, bedding, as well as business files in his hotel room.

10. A very few days after he received his so-called divorce decree he returned to Ohio, even flying back to Chicago from Reno.

11. He was back in Ohio at one time while his case was pending in Nevada.

12. He wrote two cards to his son, each time telling him to get in touch with the Snyder woman, whom he married on July 31, 1946.

13. He kept his membership in clubs to which he belonged and did not demit.

14. The records of his own company show that they knew of no change in his job, only an absence, as was evidenced

by a letter written by R. F. Hoard, Agency Secretary of The Massachusetts Protective Association, of which company the defendant was an insurance agent. The letter is as follows:

"June 25, 1946.
Mrs. Stanley M. Neal,
389 Fountain Street,
Akron 6, Ohio.
Dear Mrs. Neal:
Thank you for your letter of June 21 just received. You have asked about your husband, Stanley M. Neal—Mr. Neal is still under contract representing us in Ohio with headquarters at Montpelier. I think he was out of his territory between collection periods and it seems to me I remember some one saying that he took a trip to Nevada. Mr. Neal's present address is Allen Hotel, Montpelier, Ohio. Trusting the above gives you the information desired, I am,
Very truly yours,
R. F. Hoard,
. Agency Secretary."

15. The defendant, Neal, did not wind up his business affairs in Montpelier nor did he break up his home. He took nothing with him but clothing, and returned to the same room in the Allen Hotel in which he had formerly lived.

16. The telegram introduced by the defendant himself shows that before he was divorced he was ordered to resume his job at Montpelier, Ohio. The telegram is as follows:

"May 27, 1946. Stanley M. Neal. Our intention that you return to Ohio on same basis as when you left. Regards. Harry J. Shaffer."

17. The allegations in his answer that he was temporarily in Ohio, although he has now been back from Nevada two years and a half, and still has his residence in Montpelier, married on July 31, 1946, and continued in the same business that he was formerly in.
Williams v. North Carolina, 325 U. S. 226:

"Syllabus 2. A decree of divorce rendered in one state may be collaterally impeached in another by proof that the court which rendered the decree had no jurisdiction even though the record of the proceedings in that court purports to show jurisdiction.

"Syllabus 3. Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded upon domicile. Domicile as distinguished from mere residence, is essential to vest jurisdiction in a court to grant a decree with extra-territorial effect where the defendant has not been personally served or entered an appearance."

This domicile, as set forth in 14 O. Jur. page 536-537, must be a bona fide domicile.

14 O. Jur., 564-565:

"The domicile of a person is where he has his true, fixed, permanent home, a principal place of establishment, and to which, whenever he is absent, he has the intention of returning."

The courts of Ohio are not jealous of the powers of the courts in foreign states to adjudicate matrimonial matters as long as they are properly determined by a court having jurisdiction over the subject matter. But persons who are domiciled in Ohio have the right to expect protection from our courts against wrongs perpetrated upon them by reason of the fraud practiced upon the foreign courts by their spouses.

Bivinger v. Bivinger, 42 N. Y. Supplement 848. This is a case wherein the parties had their domicile in New York. The defendant went to Florida and after a ninety-days residency period required by the statutes of that state instituted divorce proceedings. In May, 1937, the plaintiff obtained a decree of divorce, then left Florida within two weeks thereafter. In denying his claim of domicile in Florida the Court said:

"Of course the defendant testified he went to Florida to establish a domicile. True, also, he obtained a position there, but his position was temporary and so was his sojourn. He remained in Florida just long enough to obtain a divorce * * * Against conduct, talk has little weight."

Green v. Green, 303 Illinois Appeals, 398. The husband, after an unsuccessful suit in Illinois, went to Reno, Nevada, and following a residence of six weeks there instituted divorce proceedings against his wife, who did not appear but who had been served constructively. Two days after the divorce was granted the' husband went to Miami, Florida, stayed there about five months and returned to Reno and stayed there

two months in a hotel before returning to Illinois. The court held he had not acquired a bona fide domicile in Nevada.

The case of **Smerda v. Smerda, 35 O O, page 472 (48 Abs 232)** is practically on all-fours with this case, only this was an action for declaratory judgment wherein the court was asked to declare the decree of divorce obtained by Frank Smerda in Nevada to be void and to adjudicate Estelle Smerda to still be Frank Smerda's lawful wife. The facts are quite similar to this case as to the length of residency in Nevada and the other surrounding circumstances. In that case the court held that the Nevada court did not have jurisdiction because Frank Smerda had not established a bona fide domicile in Nevada and that Estelle Smerda was still his wife.

The defendant's counsel raised the point that the plaintiff herein in her affidavit for constructive service against the defendant in this case made the following affidavit:

"Freda Neal, being first duly sworn, says that the defendant, Stanley M. Neal, does not reside in the State of Ohio, and that service of summons cannot be had upon him within the State of Ohio. Plaintiff says that the defendant's last known residence was at 23 Fordonia Building, Reno, Nevada."

It is true that at the time this case was filed the defendant truthfully was residing in Nevada and that service could not be had upon him in the State of Ohio. However, residence and domicile are two different situations. A person may become a resident of a state and yet have his domicile in another state. And the plaintiff at the time of making the affidavit might have been under the impression that the defendant was actually going to maintain his residence and domicile in Nevada. However, after a perusal of the surrounding circumstances and after the divorce had been obtained in Nevada and the defendant returned, she became well apprised of the fact that such was not the defendant's intention.

The Court has the right to review all of the attending circumstances of the case and to scrutinize the conduct of the defendant herein, for at times actions speak louder than words, and again, they are silent. So while most of the testimony of the defendant was not disputed verbally as to his intention to establish a domicile in Nevada, yet in the determination of the truth of the ultimate facts by recounting all of the things that the defendant did or did not do, it impresses the Court that this conduct and the existing circumstances were such as to greatly outweigh the testimony of the defendant as to his intentions, and the Court finds that the defendant

practiced a fraud upon the Nevada court, and that at no time did the defendant entertain even the slightest intention of becoming domiciled in Nevada, and, therefore, not being a bona fide domiciliary resident of Nevada at the time his divorce was obtained the court of Nevada had no jurisdiction over the subject matter and the divorce is a nullity.

The next question to be decided is whether this Court has jurisdiction to hear this divorce and alimony action since the court of Williams County had already allowed permanent alimony to the plaintiff in this case.

The Court finds that the Williams County Court of Common Pleas, hearing the alimony action, ordered the defendant herein to pay the plaintiff the sum of Sixty Dollars per month, and that the furniture of the parties be sold and the proceeds divided. Partial payments of alimony were made by the defendant to the plaintiff but the furniture was never sold.

**Durham v. Durham, 104 Oh St page 7,** upon petition of the wife for alimony alone, the trial court is not authorized to make an equitable division of the husband's property but is confined by §11998 GC, to make an award as alimony for her maintenance and support only during their separation.

Usually alimony proceedings are adopted when the plaintiffs therein, because of religious scruples, do not believe in divorce, or because they hold a hope that there might be a reconciliation. As set forth in the plaintiff's brief, the court in an alimony action is much more limited than when allowing alimony in a divorce case. In the first instance, the parties are living separate and apart but in the eyes of the law are still man and wife, whereas, by a divorce the matrimonial bonds are severed and all of their property rights are definitely and permanently determined.

It is well established that in actions for divorce in which the court has jurisdiction over both parties the final decree of divorce will include all questions of alimony, and, therefore, a wife cannot thereafter bring a separate action against her divorced husband, but that cannot be said of cases wherein alimony alone is asked. In other words, a final decree in a divorce case wherein the court has personal jurisdiction over the parties is a finality even as regards alimony, but an alimony action does not preclude a subsequent action for divorce.

28 O. L. R. 166, Fessenden v. Fessenden:

"A common pleas judge is without authority to set aside and vacate a decree for alimony which was to run indefinitely granted by a court of competent jurisdiction."

However, the Court of Williams County had acquired no jurisdiction over a divorce between the Neals and only had jurisdiction over the alimony proceeding so long as the parties were not divorced by a court of competent jurisdiction.

**Sec. 11990 GC:**

"Where a divorce is granted because of the husband's aggression the court shall, if the wife so desires * * * allow such alimony out of her husband's property as it deems reasonable * * *."

This Court does not question the holding in the case of Fessenden v. Fessenden in so far as alimony actions are concerned, but a divorce action is a separate and distinct matter and where one court of competent and concurrent jurisdiction has awarded permanent alimony in one case, that acquisition of jurisdiction in the alimony matter does not preclude another court of concurrent jurisdiction from entertaining a suit for divorce and alimony and acquiring jurisdiction over the subject matter even to the extent of granting permanent alimony, provided the court originally deciding the question of alimony in an alimony action only did not award alimony in a lump sum which has been paid.

The Court therefore finds that since the Court of Common Pleas of Williams County, Ohio, did not order the defendant to pay the plaintiff a lump sum as permanent alimony that this Court, having acquired jurisdiction over the parties in a divorce and alimony action, has the right to determine not only the question of divorce but also the rights of the plaintiff as to permanent alimony.

Coming now to consider the grounds for divorce and alimony, the Court finds that the plaintiff has been a resident of the State of Ohio for more than one year last past from the filing of her petition in divorce, and a resident of the County of Summit for more than thirty days immediately last past from the filing of said petition; that she and defendant were married as set forth in her petition, and that there is one son, Robert, an issue of said union who is at the present time residing with his father in Montpelier, Ohio; that the defendant has been guilty of acts of gross neglect of duty and extreme cruelty, as alleged, and that she is entitled to divorce as prayed for in her petition.

The Court further finds that the minor son of the parties herein is living with his father in Montpelier and has indicated his desire to so remain, and that while the defendant was

grossly neglectful of his wife and treated her with extreme cruelty he is a fit and proper person for the custody of his son, and the same should be awarded unto him permanently, reserving unto this plaintiff the right of visiting said child at any and all reasonable periods.

Coming now to the question of alimony, the Court finds that the plaintiff should be awarded permanent alimony in the sum of Sixty Dollars per month, said payments to continue until this plaintiff remarries or dies or until she has secured employment, and in the latter event a modification will be established; that the furniture belonging to these parties, which is stored in the Knickerbocker Warehouse & Storage Company, Akron, Ohio, or elsewhere, is also given to this plaintiff as permanent alimony; that the defendant should pay the storage charges on said furniture; that the defendant should restore to plaintiff her insurance policy or policies; and that the defendant should pay the plaintiff's attorney the sum of Two Hundred Dollars as reasonable attorney fees, together with the costs herein incurred.

Journal entry to be prepared to conform to the Court's finding, saving exceptions to both plaintiff and defendant.