**SMERDA, Plaintiff, v SMERDA, Defendant.**

Court of Common Pleas, Cuyahoga County.

No. 521,038.   Decided May 1, 1947.

Leonard S. Danaceau, Cleveland, for Plaintiff.
Boyd, Brooks & Wickham, Cleveland, for Defendant.

## OPINION

By McNAMEE, J.:

This is an action for a declaratory judgment wherein plaintiff, Estelle Smerda, asks this Court to declare a decree of divorce obtained by defendant Frank Smerda in Nevada to be void, and to adjudicate that she is the defendant's lawful wife. Plaintiff seeks no coercive relief. Plaintiff and defendant were married in 1931 and resided in this county as husband and wife until their final separation in March, 1937. One child was born of said marriage.

In March, 1937, Frank Smerda filed a petition for divorce in the Common Pleas Court of Cuyahoga County, Ohio. Estelle Smerda filed an answer thereto, and a cross petition, in which she prayed for alimony, custody of their minor child, and an order for the child's support. In 1939 this court denied Frank Smerda's petition for divorce and granted his wife the relief prayed for in her cross petition, including an award for alimony in the approximate sum of $18,500 payable $1500 in cash and the balance in weekly installments of $40 each. Estelle Smerda was also awarded custody of the minor child and the court ordered Frank Smerda to pay $10 per week for the child's support. To secure the payment of the alimony award, the court made the same a lien upon certain shares of stock owned by Frank Smerda in the National Realty & Finance Company

and Smerda's Music House, Inc. Frank Smerda appealed from the judgment of the Common Pleas Court but in the spring of 1941 the Court of Appeals of this district affirmed the judgment of the court below.

In January, 1942, together with his mother, who had been advised by her physician to go west in the interest of her health, and a Mrs. Emile Boresch, a widow, Smerda left Cleveland, and traveled by automobile to Tucson, Arizona. On January 29, 1942, after spending about eight days in Tucson with his mother and Mrs. Boresch, Smerda drove to Carson City, Nevada. Staying one night at Carson City, he then went to Reno, Nevada, and obtained a room at the home of a Mrs. Mathews. Immediately upon the expiration of six weeks' residence in Reno, Nevada,—On March 14th, 1942,—Smerda filed suit for divorce against his wife Estelle Smerda, on the ground that defendant and plaintiff had not cohabited as man and wife for a period of more than three years. Under Nevada law personal service of summons out of the state may be substituted for service by publication. Pursuant to this law plaintiff was served with summons and a copy of the divorce petition here in Cuyahoga County, the service being made by local counsel for Frank Smerda on March 18th, 1942. Estelle Smerda was never in Nevada, did not enter her appearance in the action or in any way submit to the jurisdiction of the Nevada court.

On April 18th, 1942, upon his testimony, corroborated only as to his period of residence in Nevada by Mrs. Mathews, Smerda obtained a decree of divorce. On April 20th he left Reno, Nevada, and went to San Francisco to see Robert M. Brown whom he had met and claims to have done business with during his stay in Reno. After spending one day in San Francisco, Smerda left for Tucson, Arizona, and the day following his arrival there his mother and Mrs. Boresch accompanied him back to Cleveland. A few weeks after his return to Cleveland Smerda and Mrs. Boresch went to Covington, Kentucky, where a ceremonial marriage was performed. They returned to Cleveland to live as man and wife, and shortly thereafter the plaintiff, learning of the marriage, instituted this action.

Upon the original hearing of this cause the court granted defendant judgment on the pleadings. An appeal was taken and after some delay occasioned by an error in the journal entry the Court of Appeals reversed the holding of this court and remanded the cause for trial. Additional relevant facts bearing upon the issue to be determined are hereinafter outlined.

It is plaintiff's contention that the Nevada decree is void because Frank Smerda did not establish a bona fide domicile

in that state and that the Nevada court was without jurisdiction to hear and determine his action for divorce. Defendant asserts that he was in good faith a domiciliary of Nevada at the time he procured the decree of divorce, and further that in this action wherein only an adjudication of status is sought and no coercive relief prayed for, plaintiff cannot question the jurisdiction of the Nevada court.

It is defendant's view that an attack upon the jurisdiction of the court of another state to grant an uncontested divorce decree upon substituted service must be made by a State, or for a purpose in which a State has a direct and immediate interest; that is, that the attack must be made with a definite remedial objective and be not "merely an assault upon the marital status." In support of this view defendant relies upon the expressions of the United States Supreme Court in the syllabi and opinion of **Williams v North Carolina**, 325 U.S., 226, and upon the concurring opinions of Justices Douglass and Rutledge in **Essenwein ex rel Essenwein**, 325 U.S., 279.

An examination of the opinion in the Williams case will quickly dispel the notion that the decision in that case has the limited effect claimed for it by defendant. The Williams case involved a prosecution by the State of North Carolina for bigamous cohabitation, and it is true that the Supreme Court in its opinion and in paragraph 4 of the syllabus refers to, and declares it to be the right of a State to question the jurisdictional basis of a divorce decree granted in another State, for the purpose of enabling the challenging State to vindicate its social policy and to punish for particular acts and the like. But manifestly these expressions were not intended as limitations upon the general principles of law announced by the Supreme Court and which impart to the decision in the Williams case its far reaching and controlling effect.

Paragraph 2 of the syllabus of the Williams case reads:

"A decree of divorce rendered in one state may be collaterally impeached in another by proof that the court which rendered the decree had no jurisdiction, even though the record of the proceedings in that court purports to show jurisdiction."

The sharp and vigorous criticism of the court's decision as expressed in the dissenting opinions of Justices Rutledge and Black demonstrate the dissenters' awareness that the court's opinion in the Williams case fixed no limitation as to parties or forms of action in which an attack may be made upon the jurisdictional foundation of uncontested divorce de-

crees based upon substituted service, nor do the concurring opinions of Justices Rutledge and Douglass in the Essenwein case **supra** support defendant's contention. That case, which involved an order of support, was decided squarely upon the doctrine of the Williams case. The additional reasons for their concurrence which were expressed by Justices Rutledge and Douglass in the Essenwein case, indicate the authors' opinions that the jurisdictional basis for a decree of divorce in one state "capable of foreclosing an action for maintenance and support in another state, may be different from that required to alter marital status with extra-territorial effect." But these views are not efficacious to narrow the scope or effect of the general principles enunciated by the court in the Williams case **supra**.

Adequate sanction for an action to determine marital status only, is found in the Declaratory Judgment Act of Ohio. **Sec. 12102-12 GC** declares the purpose of that Act to be "to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." **Sec. 12102-1 GC** provides that "Courts of record within their respective jurisdictions shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

In **Borchard on Declaratory Judgments, Second Edition, page 79**, the author says:

"The more typical situation is that in which one of the parties to an earlier marriage wishes to assert its continued validity and the invalidity of a second marital relation. As a rule, one spouse has left the matrimonial domicil, secured a divorce in another state without service of process on the deserted spouse, and then possibly contracted a second marriage. Not caring to undertake an action for divorce or annulment of the second marriage, or, if the wife, a suit for support and maintenance; the deserted spouse can obtain effective relief from the uncertainty of his or her status by an action for a declaration that plaintiff is still the wife (or husband) of the defendant and that the purported divorce and hence the remarriage are void."

One of the leading cases in the United States on this subject is Bauman v Bauman, 250 New York, 382; 222 Appeals Div. 460. In that case the Court of Appeals of New York affirmed the judgment of the Appellate Division declaring a Mexican divorce obtained by the husband to be null and void, and ad-

judged that the plaintiff was the legal wife of the defendant Bauman notwithstanding his ceremonial marriage to another woman following the alleged divorce. The Court of Appeals of New York reversed the Appellate Division's action in granting an injunction against the defendant husband and his alleged second wife from holding themselves out as man and wife and also reversed the Appellate Division's order which enjoined the second wife from using the name Bauman, but the Court of Appeals had no difficulty in determining that although plaintiff was not entitled to the injunctive relief sought, her action to determine marital status and to declare her husband's decree of divorce invalid was well founded.

At the time plaintiff in the Bauman case brought her action for declaratory judgment, she was receiving the sum of $21,000 per annum from her husband under the terms of the separation agreement between them. That case involved the validity of a Mexican decree of divorce. In that respect it is essentially different from the factual situation here presented, but upon the question of the right of a state court to grant relief in a declaratory judgment action concerned only with a determination of marital status, the Bauman case is an authority meriting highest respect. Reference to the opinion of the Appellate Division (222 App. Div. 463) in the Bauman case discloses that the Declaratory Judgment Act of New York upon which the court's determination was based, is in words and substance, similar to, if not identical with, the provisions of the Ohio Act hereinbefore referred to.

Sodero v Sodero, 56 N. Y. S. (2d) 823, also is an authority sustaining plaintiff's right to maintain this action. In that case an Arkansas decree of divorce was held to be void in an action to determine marital status only. Compare **Smith v Smith, 72 Oh Ap 203.**

There can be little doubt that plaintiff has the right to challenge the jurisdictional basis of the Nevada decree of divorce procured by defendant. Important legal rights attach to the relationship of marriage and plaintiff cannot be precluded from asserting her right to a determination whether she is the wife of Frank Smerda merely because she seeks no other or further relief.

As hereinabove indicated, Williams v North Carolina, 325 U. S., 226, is the most recent and controlling case on the question here involved. In that case there was presented to the Supreme Court of the United States the question whether North Carolina was required to give full faith and credit to divorce decrees of one of the courts of Nevada, where North Carolina had found, contrary to the determination of the

Nevada court, that the petitioners were not domiciled in Nevada at the time the decrees of divorce were obtained. Declaring that judgments of a court of another state are entitled to full faith and credit only where its jurisdiction over the subject matter or the person is not impeached, United States Supreme Court held that divorce decrees of sister states are subject to collateral impeachment upon proof that the court rendering the decree was without jurisdiction. In Paragraph 3 of the syllabus of the Williams case the court reaffirmed the well settled rule that—

"Under our system of law, judicial power to grant a divorce —jurisdiction, strictly speaking, is founded on domicile."

Domicile, as distinguished from mere residence, is essential to vest jurisdiction in a court to grant a divorce decree with extra-territorial effect where the plaintiff has not been personally served or entered an appearance. In **14 O. Jur. 536-537**, it is stated:

"In order for a court of another state to acquire such jurisdiction of the subject matter in divorce proceedings as to entitle a judgment rendered therein to recognition in the courts of Ohio, it is essential that either one or both of the parties have a bona fide domiciliary residence in such state."

**Van Fossen v State, 37 Oh St 317;**
**Cox v Cox, 19 Oh St 502;**
**Larick v Walters, 39 Oh Ap 363;**
**Smith v Smith, 72 Oh Ap 203, 163 A. L. R., 370.**

The domicile of a person is where he has his true, fixed, permanent home and principal place of establishment and to which, whenever he is absent, he has the intention of returning. **14 O. Jur. 564, 565, Sec. 3; Sturgeon v Korte, 34 Oh St 525, 17 Amer. Jur. 588.**

It is universally held that in order to acquire domicile these essentials must concur: (1) Residence in the new locality, and (2) an intention there to remain. There must be a concurrence of the fact and the intent. In addition there must be an intention to abandon the old domicile. 17 Amer. Jur. 599. In Williams v North Carolina, **supra**, the court stated:

"Domicile implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance."

The decisive question here to be determined is whether Smerda had acquired a bona fide domicile in Nevada at the time he obtained his decree of divorce from plaintiff in that state. In resolving this issue the Court must evaluate the evidence in the light of the foregoing rules of law, also it must be recognized that the Nevada decree is prima facie valid, and as stated by the United States Supreme Court in the **Williams** case, **supra**, the burden of undermining its validity "rests heavily upon the assailant."

In addition to the circumstances recited at the outset of this opinion, the following evidentiary facts relevant to the issue of domicile appear in the record. Frank Smerda lived in Cuyahoga County, Ohio, since 1906. His first marriage in 1916 was dissolved by a decree of divorce in 1920. One child was born of that union. As hereinabove noted he later married plaintiff herein. In 1925 he became the owner of the business now known as Smerda's Music House, Inc., as well as the owner of the property in which the business is conducted. In 1930 he formed two corporations—The National Realty & Finance Corporation which acquired the real estate and Smerda's Music House, Inc., which became the owner of the retail business. Except for necessary qualifying shares, Smerda at all times has been the owner of all of the shares of stock of both corporations. Since its formation he has been continuously president, treasurer and a director of the National Realty & Finance Corporation. He has occupied the positions of president and director of Smerda's Music House, Inc., since the organization of that corporation and except for the period between December, 1941 and August, 1942, he also has been its treasurer. At the time his petition for divorce was denied by this court late in 1939, the court determined his net worth to be $80,000.00. The volume of business done by Smerda's Music House, Inc., was approximately $167,000.00 in 1940 and in 1941 amounted to $158,000.00.

In addition to his divorce suit in this court he also was involved in litigation with his father. Late in 1941 arrangements for a settlement of the latter controversy were effected and a loan of $10,000.00 was made to the National Realty & Finance Corporation upon conditions imposed by the lender that an accountant selected by him be a director of Smerda's Music House, Inc., and that the management of the later corporation be supervised by the accountant and one other person pending repayment of the loan. At that time there was also an arrangement for a voting trust, the exact nature and terms of which do not appear.

At the time of his departure from Cleveland early in 1942 Smerda was a member of three lodges in this city and also a member of the Edgewater Yacht Club and the owner of a twenty-four foot power boat. He had a small savings account at one of the local banks which remained unchanged during his absence from the city. Immediately preceding his departure for Arizona, Smerda opened a commercial checking account with The Cleveland Trust Company. He signed a book of blank checks and gave it to one of the clerks in his store. He claims that no instructions were given to the clerk but it appears that at regular intervals during his absence, checks covering the weekly installments of alimony and support were delivered to the plaintiff. Regular deposits were made in this commercial account from disbursements by Smerda's Music House, Inc., to the credit of Frank Smerda.

When he left for Arizona, Smerda took but one traveling bag of clothing and personal effects with him. He testified that at that time he had no definite plan in respect of his return nor had he determined whether he would establish a home elsewhere. He stated that during his brief stay in Arizona with his mother and Mrs. Boresch he learned from an unidentified person in Tucson that Reno, Nevada, offered attractive prospects for the sale of electrical appliances; that because of his experience in Cleveland in that business he decided to go to Reno to explore the possibilities of engaging in business there. He asserts that upon leaving Tucson for Nevada he had no intention of obtaining a divorce.

He left Tucson on the morning of January 29, 1942, drove a distance of seven hundred miles, and arrived at Carson City, Nevada, that night. As hereinbefore noted, the following day he went to the home of Mrs. Mathews in Reno. He states that he did not consult a lawyer until three weeks after his arrival there.

Smerda testified that after a few weeks stay in Reno he became so impressed with the potentialities of the electrical appliance business there that he then decided to remain indefinitely in that city.

About the middle of February, 1942, he was employed as a salesman by the Silver State Appliance Company on a commission basis and continued to work for that company until his decree of divorce was obtained on April 18, 1942. Defendant also claims that while in Reno he worked for Robert M. Brown who also was engaged in the electrical appliance business. He states that he canvassed for prospects and acted as a salesman for Brown, also, that during the latter's absence from the city, he managed Brown's business. Defendant claims to have

had conversations with Brown relative to the formation of a partnership between them and that he contemplated investing $5,000.00 to acquire an interest in Brown's business.

A few days before Smerda obtained his decree of divorce, Brown was taken ill in San Francisco. Within forty-eight hours after Smerda's divorce was granted, he went to see Brown in San Francisco where he found the latter to be suffering from serious hemorrhages of the throat. Smerda asserts that Brown's physical condition as he observed it in San Francisco on April 20th, 1942, was so discouraging as to cause him to change his mind about the proposed partnership venture. Smerda visited Brown on one or more occasions on April 20, 1942, and although Brown's illness continued for several weeks thereafter, and Smerda professed to be the manager of Brown's business, defendant left San Francisco the day following his arrival there and without returning to Reno, rejoined his mother and Mrs. Boresch in Arizona. As noted above, he returned to Cleveland immediately thereafter.

Smerda's testimony in reference to his relationship with Brown is corroborated by the latter's testimony on deposition and in part by the testimony of Brown's wife.

Other circumstances in the record relating to Smerda's conduct while in Reno—such as his filing the 1941 income tax return—his procurement of a Nevada auto license—the payment of a poll tax and personal property tax as prerequisites to obtaining the auto license—his registration for Selective Service, and all other facts have been considered by the Court and need not be recited in detail.

In support of his claim of domicile in Nevada, Smerda relies heavily upon his testimony that he intended to remain in Nevada indefinitely for the purpose of engaging in the electrical appliance business. He attempts to explain his departure from that state immediately after obtaining his divorce as being due solely to the serious illness of his prospective partner, Brown. If it be assumed that Brown's physical condition on April 20, 1942, was such as to render his prospects of recovery doubtful, the fact remains that Smerda left at the very time when his managerial services were most needed. It does not appear that after leaving San Francisco, Smerda made any further inquiry about Brown's condition of health. Nor does the record disclose that when Brown recovered there was a renewal of the supposed negotiations between them. It seems quite clear that at the time Smerda visited Brown in San Francisco he had no intention of returning to Reno. The record is barren of evidence tending to show that Smerda communi-

cated his supposed intention to remain in Nevada to any of his relatives or business associates in Cleveland. Nor is there any evidence of an effort on his part to procure $5,000.00 to invest in Brown's business. His statement that he intended to remain in Nevada indefinitely does not square with his conduct. At the time he went there he had no friends or business connections in Nevada. His business and social roots were firmly and deeply imbedded in Cleveland, Ohio. He had lived here continuously for a period of thirty-six years and was the owner of property of substantial value and the owner of a well established and prosperous business located in a thriving neighborhood in this city. His conduct is an eloquent contradiction of his professed intent.

Under Nevada law six weeks residence there, is a prerequisite to the filing of a petition for divorce. Smerda obtained a room in Reno on January 30, 1942, and forty-three days thereafter—one day after the six week period—he filed his petition for divorce. The fact that a man takes up his residence in another state and applies for a divorce soon after he is able to do so was said by Chief Justice Shaw in Smith v Smith, 13 Gray, 209, to give rise to a "violent" if not "conclusive" presumption that he went there for that purpose. Jones v Jones, 17 Nisi Prius, N. S., 456.

The summons served on Mrs. Smerda in Cuyahoga County on March 18, 1942, notified her to appear and defend within thirty days thereafter (exclusive of the day of service). The case was heard and determined on the 31st day after service of summons—April 18, 1942. Thus, almost within the very minimum of time permitted by law, Smerda accomplished the purpose of his visit to Nevada. He moved rapidly to achieve this end. The seven hundred mile drive in one day from Arizona to Nevada; his quick return to Tucson where his mother and Mrs. Boresch were waiting for him, together with his subsequent prompt arrival back in Cleveland, reflect his real purpose. Notwithstanding his express and vigorous disclaimer to the contrary, the evidence irresistibly forces the conclusion that he went to Nevada for the sole purpose of obtaining a divorce.

Smerda had tried unsuccessfully in Ohio to obtain a release from the marital ties that bound him to plaintiff. Their marriage was an unhappy one and the differences between them were irreconcilable. Smerda undoubtedly viewed this situation as intolerable and it was not unnatural that he should seek to obtain in Nevada, the relief he had been denied in Ohio.

The circumstances of this case clearly negative any intention on Smerda's part to abandon his home in Cleveland, and establish a domicile in Nevada. As noted above, his quick departure from Nevada after obtaining his divorce is not satisfactorily explained by the suggestion that he changed his mind about remaining in that state after his visit to Brown in San Francisco. Under similar circumstances, courts of other jurisdictions, uniformly have denied a claim of domicile in the divorce decreeing State.

In Martin v Martin, 136 N. J., Eq. 22, 26 Atl. 18 (2d), 491 (1942) the court said:

"The testimony of the appellant 'that he would have stayed down there if business had gone along all right discloses, in itself, a mental reservation' fatal to the yielding up of New Jersey residence and the acquiring of a Florida residence."

In Buvinger v Buvinger, et al., 42 N. Y. S. 848, the matrimonial domicile of the parties was in New Jersey. The defendant went to Florida and after the 90 day residential period required by the statutes of that State, instituted suit for divorce. In May, 1937, he obtained a decree of divorce, then left Florida within two weeks thereafter. In denying his claim of domicile in Florida the New York court said:

"Of course defendant testified that he went to Florida to establish a domicile there. True, also, he obtained a position there. But his position was temporary, and so was his sojourn. He remained in Florida just long enough to obtain a divorce. * * * against conduct, talk has little weight."

In Hall v Hall, 24 Southern (2d) 347, the husband, a physician, drove to Nevada, and while residing there pending the divorce hearing, passed the medical examination requisite to practice medicine in that state. He procured a license and did in fact engage in practice in association with a local doctor. Upon his return to Mississippi he resumed his practice there. Although he testified, at the time of the trial in Mississippi, that he planned to resume practice in Nevada at a later date, the court held that he had not acquired a domicile in the latter state at the time he procured his divorce.

In Grain v Grain, 303 Ill. App. 298; 25 N. E. (2d) 409, the husband after an unsuccessful suit in Illinois went to Reno, Nevada, and following a residence of six weeks there, instituted divorce proceedings against his wife who did not appear, but

was served constructively. Two days after the divorce was granted the husband left Nevada for Miami, Florida, where he stayed about five months, and returned to Reno, Nevada, and remained there two months in a hotel. At the end of this time he returned to Illinois. The Illinois court held that he had not acquired a bona fide domicile in Nevada.

Discussion of other cases is unnecessary.

In 143 A. L. R., 1300, 157 A. L. R. 1412, and 163 A. L. R., 371, will be found a collection of cases where courts of various domiciliary states denied the validity of divorce decrees of other states based upon substituted service and founded upon mere residence as distinguished from domicile. In many of the cases cited in the digests there was a change of residence from the admitted and undisguised purpose of obtaining a divorce. In others, it was sought upon various pretexts, to cloak the real purpose of the change of residence. But with remarkable unanimity the courts of the several states held, that where it appeared that a spouse took up residence in another State for the sole purpose of obtaining a divorce, no bona fide domicile was acquired in such state. These holdings are in harmony with the law of Ohio.

"As a general rule, the residence of a person in another state for the sole purpose of conferring jurisdiction of a divorce proceeding will not be recognized as valid. It is held accordingly that where parties are residents in this state, and one of them removes to and resides in another state for the sole purpose of maintaining there an action for divorce, such residence, not being bona fide, is not sufficient to confer jurisisdiction upon the courts of such foreign state, and that an action so instituted will be disregarded by the courts of Ohio."

14 O. Jur. 537.

While perhaps not controlling, it may be noted that the divorce obtained by defendant in Nevada was upon a ground not recognized in this state. No question of fault was involved and the plaintiff would have been unable to defend against the charge "that the parties had not cohabited for a period of more than three years." To hold Smerda's divorce decree valid under the circumstances here disclosed would be tantamount to substituting the divorce laws of Nevada for the laws of this state in favor of a person domiciled here.

Nevada has the unquestioned right to adopt any divorce policy she may choose and make it applicable to her permanent residents. As to those having a bona fide domicile in that

State, Nevada may prescribe the residential requirements for instituting proceedings for divorce. But Nevada is without power to intrude upon the domestic affairs of persons domiciled in Ohio upon the basis of mere temporary residence there. As Mr. Justice Jackson aptly observed in his dissent from the first Williams case, 317 U. S., at page 321:

The universality of the rule that requires domicile as an essential prerequisite of jurisdiction in divorce cases is noted by Mr. Chief Justice Frankfurter in the second Williams case, (325 U. S., 226) where, in commenting upon the rule, he said:

"The framers of the Constitution were familiar with this jurisdictional prerequisite and since 1789 neither this court nor any other court in the English-speaking world has questioned it."

Divorce is not a matter of concern only to the immediate parties. The State also has a real interest in proceedings for divorce. As stated in 17 Amer. Jur. 155, Section 13:

"It has been said by the Court and eminent writers on the subject that such an action is really a triangular proceeding, to which the husband and wife and the State are parties. When an attempt is made through the courts to undo a marriage, the State becomes in a sense a party to the proceedings, not necessarily to oppose, but to make sure that the attempt will not prevail without sufficient and lawful cause shown by the real facts of the case, or unless those conditions are found to exist at the time the decree is made on which the State permits a divorce to be granted."

The State that is an interested, but unnamed party to divorce proceedings, is the State of domicile. The preservation of the familial status, of its permanent inhabitants, is the exclusive concern of the domiciliary State. The parties to a marriage and their offspring, constitute a basic unit of the society of the State where they have their permanent place of abode. Their rights, duties and obligations, as well as the grounds upon which the relationship may be terminated, are defined by the social policy of that State. Married persons domiciled in the same State, are not subject to the divorce laws of two or more states. When one of the spouses acquires a bona fide domicile in another state, then the domiciliary State of each spouse, is vested with jurisdiction to dissolve the marital status. Since the first Williams case, decided by the United States Supreme Court in 1942, (Williams v North Carolina, 317

U. S., 287) the courts of the domiciliary State, of either husband or wife, may dissolve the marital status upon substituted service on the absent spouse, if the requirements of due process are met. But, where either husband or wife leaves the domiciliary State of both, and takes up temporary residence in another state, the courts of the latter state are without power to dissolve the marital status which still remains subject to the jurisdiction of the State of domicile.

Smerda's temporary residence in Nevada did not confer jurisdiction upon the court of that State to dissolve the marriage of plaintiff and defendant. His divorce suit in Nevada had its origin in a jurisdictional vacuum and the decree of divorce which was granted to him was not effective to dissolve the marital status of the parties.

Accordingly, it is held, upon the authority of Williams v North Carolina, 325 U. S., 226, that Smerda's decree of divorce is not entitled to recognition in Ohio and that plaintiff and defendant are husband and wife.

A journal entry may be prepared in accordance with the foregoing. Exceptions allowed to defendant.