HAGER, Appellee,

v.

HAGER, Appellant.

[Cite as *Hager v. Hager* (1992), 79 Ohio App.3d 239.]

Court of Appeals of Ohio,
Greene County.

No. 91–CA–0052.

Decided April 15, 1992.

240

*S. Richard Richman,* for appellee.

*Keith R. Kearney,* for appellant.

GRADY, Judge.

Marjean Hager appeals from the order of the Greene County Common Pleas Court, Domestic Relations Division, overruling her motion to dismiss the complaint for divorce filed by Joseph W. Hager for lack of jurisdiction. The

trial court found that it has *in rem* jurisdiction over the status of the marriage. We agree, and will affirm the judgment of the common pleas court.

## I

### Facts

On October 11, 1990, Joseph W. Hager filed his complaint for divorce from his wife, Marjean Hager. The plaintiff listed his address as 1896 South Highgate Court, Beavercreek, Ohio, and his wife's address as 13006 Renfrew Circle, Ft. Washington, Maryland. The complaint asked that plaintiff be granted a decree of divorce, that the court make an equitable division of the marital property, and for such other relief as might be necessary and proper.

On November 7, 1990, Marjean Hager filed, pursuant to Civ.R. 12(B), a motion limited to a request to dismiss the complaint for lack of jurisdiction. She argued that the court lacked subject matter jurisdiction as well as personal jurisdiction necessary to adjudicate the claims for relief in the complaint.

The trial court assigned the motion to dismiss for hearing by a referee, who took testimony and other evidence from Joseph W. Hager and two other witnesses.

Plaintiff Joseph W. Hager testified that he and defendant Marjean Hager were married in December 1969, in the state of Idaho, and that three children have been born of the marriage. Plaintiff further testified that in 1973 he joined the United States Air Force, in which he currently holds the rank of major.

Plaintiff testified that during his service in the United States Air Force he has been stationed in several different states. From his entry until August 1977, he was stationed at Wright Patterson Air Force Base, Ohio. He was then transferred to Florida, where he remained until approximately September 1980. After that, he was transferred to Colorado and, later, to the District of Columbia. While he was stationed there, he and his family resided in the state of Maryland. In August 1987, he was transferred to Alabama. From there he was transferred in February 1988 to Wright Patterson Air Force Base, which was his station at the time he filed his complaint for divorce in October 1990.

Defendant Marjean Hager did not leave the state of Maryland when plaintiff Joseph Hager was transferred to Wright Patterson Air Force Base in Ohio in March 1988. Other than several brief visits after that, she has maintained her residence in the state of Maryland and continues to do so.

Joseph Hager testified that he concluded in mid–1989 that he and his wife, Marjean Hager, could no longer maintain their marriage. At about the same time he met and began a relationship with another woman, Barbara Wolsey, and in January 1990, established a residence with her in Beavercreek, Ohio. Plaintiff Hager testified that he and Barbara Wolsey intend to be married after his decree of divorce is granted. He also testified that since mid- or late 1989, he has intended to make Ohio his permanent home. He expects to retire from the United States Air Force in 1993, and hopes to maintain his current position at Wright Patterson Air Force Base but as a civilian employee.

While he was stationed in Florida, Joseph W. Hager designated that state as his "legal residence/domicile" in a "State of Legal Residence Certificate" filed with the United States Air Force. The certificate is required by the Tax Reform Act of 1976, Public Law 94–455, to determine the correct state of residence for withholding state income taxes from military pay. Hager continued that same status after he was transferred to Ohio in 1988. He also continued to maintain his automobile title and tags in Florida and retained Florida driver's privileges. He voted in elections in Florida in 1989. He did not change these incidents of "residence" until September 1990, shortly before his complaint for divorce was filed.

Plaintiff Joseph Hager testified that, in spite of the fact that he designated Florida as his "legal residence/domicile" on his "State of Legal Residence Certificate," he had no intention to make Florida his permanent home. He explained the reason for the designation:

"In the military, one has the right to claim any state as his state of legal residence. For that reason, many military members declare a state in which there's no state income tax as their state of legal residence as a matter of convenience and for tax avoidance purposes. And that was my motive in establishing Florida as my state of residence when I lived there from 1977 through 1980, and that's the reason that I maintained it there."

Hager added that he has considered himself a resident of Ohio since moving here in 1988, but that he saw no advantage in declaring Ohio his state of legal residence until advised to do so by his attorney when his complaint for divorce was filed. On the attorney's advice he changed his "State of Legal Residence Certificate" to identify Ohio as his legal residence. This was done in September 1990, one month before his complaint was filed. At the same time, and also on his attorney's advice, he acted to establish Ohio voter registration, to register his automobile here, and obtain an Ohio driver's license. He added that, but for his attorney's advice, he would not have taken those additional steps until he retired from the military.

The referee also heard testimony from Barbara Wolsey, who confirmed that she and Joseph Hager had established a residence in Beavercreek, Ohio, in December 1989, and that he plans to stay in Ohio. Testimony was also taken from Scott Theibert, Hager's supervisor at Wright Patterson Air Force Base, who confirmed that they had talked about Hager's taking a civilian position at Wright Patterson Air Force Base after his retirement from the Air Force in 1993.

The referee recommended that defendant Marjean Hager's motion to dismiss be granted upon a finding that the court lacks personal jurisdiction to hear and determine the complaint for divorce. Plaintiff filed objections, after which the trial court on May 22, 1991, filed its "Judgment Entry Sustaining Objections to Report & Recommendations of Referee," which provided *inter alia:*

"After thorough review of the transcript, the Court finds this contention has merit and this Court has In Rem jurisdiction over the status of the marriage ONLY. This Court has no authority over property division or parental rights."

Defendant Marjean Hager filed a timely notice of appeal.

## II

Defendant Marjean Hager states as her single assignment of error:

"The trial court erred when it found appellee was a resident of Ohio for purposes of Ohio Revised Code Section 3105.03."

R.C. 3105.03 provides, *inter alia:* "The plaintiff in actions for divorce and annulment shall have been a resident of the state at least six months immediately before filing the complaint." This provision is jurisdictional, and a court lacks jurisdiction to determine the causes and grant the relief requested in a complaint for divorce brought by a plaintiff who fails to meet its requirements.

A divorce decree is regarded as judgment *in rem* in the sense that it determines marital status. *McGill v. Deming* (1887), 44 Ohio St. 645, 11 N.E. 118. It is considered that the marital status, or res, follows the domiciles of the parties. Therefore, the marriage moves from place to place with either spouse. To terminate a marriage, the court must have jurisdiction over that relationship. *Williams v. North Carolina* (1942), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279. To ensure the court's jurisdiction over the res, it is therefore required that one of the spouses be domiciled within the divorce-granting state. *Id.*

■ The word "residence" in R.C. 3105.03 means "domiciliary residence," a concept which has two components: (1) an actual residence in the jurisdiction, and (2) an intention to make the state of jurisdiction a permanent home. *Coleman v. Coleman* (1972), 32 Ohio St.2d 155 at 162, 61 O.O.2d 406 at 409, 291 N.E.2d 530 at 535; *Spires v. Spires* (1966), 7 Ohio Misc. 197, 35 O.O.2d 289, 214 N.E.2d 691.

■ The word "residence" imports an actual physical presence within the state. It signifies an abode or place of dwelling. *Franklin v. Franklin* (1981), 5 Ohio App.3d 74, 5 OBR 186, 449 N.E.2d 457.

■ "Domicile" ordinarily has a broader meaning than residence. Domicile conveys a fixed, permanent home. It is the place to which one intends to return and from which one has no present purpose to depart. *Smerda v. Smerda* (C.P.1947), 48 Ohio Law Abs. 232, 35 O.O. 472, 74 N.E.2d 751. Domicile has been described as the relationship which the law creates between an individual and a particular locality. *Sturgeon v. Korte* (1878), 34 Ohio St. 525. A party's domicile generally coincides with his place of residence. However, while an individual may have several residences, he can be domiciled in only one place at a given time. *Spires v. Spires, supra.*

■ In an original action it is plaintiff's burden to show that he is domiciled in the state. *Redrow v. Redrow* (1952), 94 Ohio App. 38, 51 O.O. 266, 114 N.E.2d 293. The standard of proof is by a preponderance of the evidence. *Sturgeon v. Korte, supra.* The fact of residence in a location is *prima facie* evidence of domicile there, but is rebuttable by proof to the contrary. 36 Ohio Jurisprudence 3d (1982), Domicile, Section 19. However, an intention to make a permanent home is known only by the individual concerned and is, therefore, largely a subjective determination. *Coleman v. Coleman, supra.*

■ Plaintiff Joseph W. Hager demonstrated by his testimony that during the six months preceding the filing of his complaint on October 11, 1990, he was located in Ohio, intended to remain, and had no intention to go elsewhere. Plaintiff demonstrated by a preponderance of evidence that his "domiciliary residence" is in Ohio. His contacts with the state of Florida, while they might support a conclusion that he was a resident of that state until September 1990, were satisfactorily explained as situations of convenience maintained for the purpose of securing a continuing tax benefit. While they may be in conflict with legal requirements imposed on residents of Ohio in respect to income tax as well as ownership and operation of automobiles, that conflict does not require a determination that his domiciliary residence is in a state other than

Ohio as it does not necessarily demonstrate a true intent to make a state other than Ohio his permanent home.

We conclude that the trial court did not err when it found that plaintiff Joseph W. Hager was a resident of the state of Ohio for purposes of R.C. 3105.03. The assignment of error will be overruled.

### III

Having overruled the single assignment of error, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, J., concurs.

BROGAN, J., dissents.

BROGAN, Judge, dissenting.

I must respectfully dissent. Major Hager had the burden of proving that he was a legal resident of Ohio during the six-month period next preceding his filing for divorce in Ohio.

Major Hager by his own admission *on September 18, 1990* "certified" to the United States Air Force that he was a legal resident of the state of Florida. He certified that it was his intent to make Florida his "permanent home" and that although temporarily absent he had the intention of returning to Florida. This certification by Major Hager permitted him to avoid Ohio income taxes. Less than a month later, he asserted in a court of law that he had been a resident of the state of Ohio for six months so as to permit him to use the Ohio court system to pursue a divorce from his spouse. Although he had transferred to Wright Patterson Air Force Base in 1988, appellee continued to vote in the state of Florida in 1988 and 1989. He continues to hold a Florida driver's license.

I believe Major Hager should be estopped from asserting that he is a legal resident of one state for one purpose and a legal resident of another for another purpose. I would reverse the trial court's judgment.