OPINION *Page 1 
{¶ 1} This case arises from the application filed by Appellee J. Ross Haffey to administer the estate of Andrew Anderson in the Monroe County Court of Common Pleas, Probate Division, on January 10, 2005. Andrew died intestate on January 10, 2003, in Monroe County, Ohio. Haffey's January 10, 2005, application to administer the estate identified the decedent's personal property as "Chose in action: Wrongful death 
Workers' Compensation." It did not list any real property. (Jan. 10, 2005, Application for Authority to Administer Estate.) It was later determined that the decedent owned real property located in North Carolina. No estate was ever opened in North Carolina.
 {¶ 2} The wife of the deceased, Lori Anderson, and the mother of the deceased, Martha Miller, both waived the right to administer the estate in favor of Haffey, the family attorney.
 {¶ 3} On February 2, 2005, Appellant, Purdue Pharma, L.P., filed a motion to dismiss Haffey's application to administer the estate for want of subject matter jurisdiction, claiming that the Ohio probate court lacked jurisdiction over this nonresident decedent's estate. Appellant is allegedly a named defendant in the decedent's estate's wrongful death and workers' compensation action which was evidently filed in Ohio. Appellant argued that the estate should have been administered in North Carolina since decedent was a resident of that state and was not a resident of Ohio.
 {¶ 4} The trial court held an evidentiary hearing on Appellant's motion to dismiss on June 15, 2005, and denied it on June 20, 2005. Appellant timely appeals *Page 2 
to this Court and argues that the decedent was not an Ohio resident at the time of his death and that North Carolina, not Ohio, has jurisdiction over his estate. Thus, Appellant claims that the Monroe County Court of Common Pleas, Probate Division, was precluded from accepting jurisdiction of this matter.
 {¶ 5} Before addressing Appellant's arguments on appeal, it should be noted that Appellee challenges Appellant's standing to pursue the instant appeal. Specifically, Appellee argues that Appellant had no interest in the administration of decedent's estate, and as such, lacks standing to pursue the instant appeal. Appellee did not raise this issue before the trial court. Thus, Appellee appears to have waived this issue on appeal. State ex rel. Jones v. Suster (1998), 84 Ohio St.3d 70, 77,701 N.E.2d 1002.
 {¶ 6} Notwithstanding, Appellee directs this Court's attention to cases holding that the issue of standing may be raised at any time during the pendency of the proceedings since standing is a threshold question for the court to decide in order for it to proceed to adjudicate an action. Buckeye Foods v. Cuyahoga Cty. Bd. ofRevision (1997), 78 Ohio St.3d 459, 460, 678 N.E.2d 917, citing NewBoston Coke Corp. v. Tyler (1987), 32 Ohio St.3d 216, 218,513 N.E.2d 302. See also Mount Union College v. Alliance City Planning Commn. (Jan. 16, 2002), 5th Dist. No. 2001CA00195, at 2. However, the foregoing cases involve administrative appeals in which standing is jurisdictional, since parties must satisfy threshold requirements for the administrative tribunal to obtain jurisdiction. Victoria Plaza Ltd. Liab. Co. v.Cuyahoga Cty. Bd. of Revision (1999), 86 Ohio St.3d 181, 183,712 N.E.2d 751. In *Page 3 
most ordinary civil actions, a lack of standing argument involves a party's capacity, "to bring an action, not the subject matter jurisdiction of the court." State ex rel. Jones at 77, quoting State exrel. Smith v. Smith (1996), 75 Ohio St.3d 418, 420, 662 N.E.2d 366. As such, if it is not raised at the trial court, it is waived. Id. See alsoDiscover Bank v. Poling, 10th Dist. No. 04AP-1117, 2005-Ohio-1543.
 {¶ 7} We also note that Appellee argues on appeal that the existence of a wrongful death action in Ohio is a sufficient basis for the probate court to administer this estate. While this may or may not be the case, the trial court's record lacks any evidence of the existence of this civil action. Further, this argument was not presented to the trial court. As such, we cannot consider it now on appeal.
 {¶ 8} Appellant's assignments of error on appeal allege:
 {¶ 9} "The Probate Court erred as a matter of law in finding that decedent was a resident of Ohio at the time of his death intestate for purposes of issuing letters of administration pursuant to R.C. §2113.01. R. 47: Journal Entry June 20, 2005.
 {¶ 10} "The Probate Court erred as a matter of law by approving a domiciliary probate application for a decedent whose real and personal property were at his domicile in North Carolina. R. 47: Journal Entry 20, 2005."
 {¶ 11} Appellant argued in its motion to dismiss and argues on appeal that the probate court lacked the power to administer this estate since decedent was a resident of the State of North Carolina and not Ohio. Thus, Appellant asserts that the trial court lacked subject matter jurisdiction to administer the decedent's estate. *Page 4 
 {¶ 12} Appellant specifically argues in the first assignment of error that the trial court erred in finding that decedent resided in Ohio based on the brevity of his stay here. Appellant claims that the cases relied on by the court involved facts where the length of the stay greatly exceeded four months. Appellant also argues that the trial court ignored the decedent's North Carolina tax records and car registration in finding that decedent was a resident of Ohio.
 {¶ 13} Appellant argues in its second assignment of error that the trial court erred in failing to recognize that North Carolina, and not Ohio, had jurisdiction over decedent's estate since he was domiciled in the State of North Carolina at the time of his death.
 {¶ 14} Appellant also claims that Appellee should have requested the ancillary administration of the decedent's estate under R.C. § 2129.04, which provides for the administration, "[w]hen a nonresident decedent leaves property in Ohio * * * ." For the following reasons, however, Appellant's arguments lack merit.
 {¶ 15} Subject matter jurisdiction involves a court's power to hear and decide cases. State ex rel. Tubbs Jones v. Suster (1998),84 Ohio St.3d 70, 73, 701 N.E.2d 1002. A motion to dismiss for lack of subject matter jurisdiction raises a question of law, which is reviewed de novo.Groza-Vance v. Vance, 162 Ohio App.3d 510, 2005-Ohio-3815,834 N.E.2d 15, at ¶ 13. However, the motion to dismiss in this case was not a Civ.R 12(B) motion to dismiss. Instead, the probate court held an evidentiary hearing to determine whether the decedent resided in the state and whether it had subject matter jurisdiction over the estate. Accordingly, we must defer to the probate *Page 5 
court's determinations as the trier of fact and affirm its decision if it is supported by competent and credible evidence. Smith v.Ahlrichs (June 26, 1985), 1st Dist. No. C-840590, 2.
 {¶ 16} The probate court is a court of limited jurisdiction, and only possesses the powers granted to it by statute. Corron v. Corron (1988),40 Ohio St.3d 75, 77, 531 N.E.2d 708; Schucker v. Metcalf (1986),22 Ohio St.3d 33, 34, 488 N.E.2d 210.
 {¶ 17} The probate court derives its subject matter jurisdiction from R.C. § 2101.24, which, among other things, permits a court to, "grant and revoke letters testamentary and of administration[.]"
 {¶ 18} Further, contrary to Appellant's arguments, R.C. § 2113.01
provides for the administration of a resident's estate, not for one domiciled in Ohio. It states, "[u]pon the death of a resident of this state intestate, letters of administration of his estate shall be granted by the probate court of the county in which he was aresident at the time he died." (Emphasis added.)
 {¶ 19} It is undisputed that decedent Andrew Anderson died intestate in Monroe County, Ohio. The instant dispute centers on whether he was actually a resident of the State of Ohio at the time of his death. Following the evidentiary hearing on this issue, the trial court determined that decedent was an Ohio resident and that it had jurisdiction to appoint an administrator in his estate pursuant to R.C. § 2113.01.
 {¶ 20} Residency is not the same as domicile. State ex rel. Lee v.Trumbull County Probate Court (1998), 83 Ohio St.3d 369, 373,700 N.E.2d 4. Domicile *Page 6 
connotes a, "fixed, permanent home to which one intends to return and from which one has no present purpose to depart." In re Guardianship ofFisher (1993), 91 Ohio App.3d 212, 215, 632 N.E.2d 533, citing Hager v.Hager (1992), 79 Ohio App.3d 239, 244, 607 N.E.2d 63. An individual can only have one domicile, and he or she does not have to be physically present at his or her domicile in order to keep the same.Fisher at 215.
 {¶ 21} However, one can have more than one residence. A residence has been defined as a "place of dwelling," and it requires, "the actual physical presence at some abode coupled with an intent to remain at that place for some period of time. * * * Thus, the term `residence' connotes an element of permanency rather than a location where one simply visits for a period of time." Id.
 {¶ 22} Appellant directs this Court's attention to Fisher, supra, in support of its argument that one must be present in the state for more than a few days or weeks to constitute a resident. However, in making the statement that one must be present for more than a few days or weeks, Fisher was discussing what constitutes a "legal settlement" as provided in R.C. § 2111.02(A), and was not interpreting the definition of "resident." In fact, Fisher stated that to constitute a legal settlement, the facts must disclose at least one year of continuous residency.
 {¶ 23} Although Fisher breaks down the differences between domicile and residence, its facts are distinguishable from the instant case since it involved a mother's application to be appointed guardian of her developmentally disabled daughter in Ohio under R.C. § 2111.02(A). The court denied the application, *Page 7 
however, finding that the girl's parents were divorced in Indiana and that the father had custody. The girl was only in Ohio with her mother for a fixed visit from March 18, 1993 until Easter Sunday, April 11, 1993. Id. at 214. In denying the mother's application, the court held that the child was not an Ohio resident, but that she was a resident of the State of Indiana where she lived with her father. She was merely in Ohio for a visit with her noncustodial parent at the time of the request. Id.
 {¶ 24} In re estate of Quick, 5th Dist. No. 08232004, 2004-Ohio-4434, is instructive in the instant matter. In Quick, the Fifth District Court of Appeals explained the differences between domicile and residence for purposes of issuing letters of administration under R.C. § 2113.01. The court stated that domicile consists of two elements: residence in a place and an intention to remain at that place; whereas, "`[r]esidence simply requires bodily presence as an inhabitant in a given place[.]'" Id. at ¶ 23, quoting Black's Law Dictionary (6 Ed. 1990) 1309.
 {¶ 25} Quick addressed whether the decedent in that case was a resident for R.C. § 2113.01 purposes. The decedent in Quick lived with his ex-wife in Allen County, Ohio until February of 2002. In early February, 2002, the decedent advised his brother that he wanted to live with him during the final days of his illness in Licking County, Ohio. Thus, his brother began moving the decedent to Licking County. However, the decedent became ill on the trip, so his brother took him to a hospital in Columbus. Thereafter, the decedent was transported to a hospital in Licking County where he died and was buried. Id. at ¶ 2-4. *Page 8 
 {¶ 26} In discussing the decedent's residency, Quick insinuated that the facts as presented in that case supported a finding of residency in Licking County. In fact, Quick seemed to suggest that the decedent may have even established Licking County as his domicile, which requires a higher burden than residency. Id. at ¶ 20, citing In re the Estate ofAdams v. Stough (1984), 11th Dist. No. 9-291.
 {¶ 27} As Appellant points out, Quick's analysis of the residency requirement was dicta since the trial court failed to conduct an evidentiary hearing on the residency issue. Id. at ¶ 25. Accordingly, Appellant argues that this Court is precluded from relying onQuick. Although Quick's analysis is dicta, it is nonetheless instructive in the instant case since it deals with nearly the same issue. Thus, while we are not bound by Quick's holding, we are not prohibited from referring to it since it is applicable to the facts at hand. Geisert v.Ohio Motor Vehicle Dealers Board (1993), 89 Ohio App.3d 559, 565,626 N.E.2d 960; Skillman v. Browne (1990), 68 Ohio App.3d 615, 619,589 N.E.2d 407.
 {¶ 28} Smith v. Ahlrichs (June 26, 1985), 1st Dist. No. C-840590, is also comparable to the instant case. It also addressed the matter of residency in order to issue letters of authority to administer an estate. The Smith Court found that the decedent was a resident of Hamilton County based on the following facts: the decedent had an Ohio driver's license; received Ohio food stamps; was a member of an Ohio Fraternal Order of Eagles; and had his vehicles registered in Ohio. Id. at 2. Thus, it upheld the probate court's decision as supported by competent and credible evidence. *Page 9 
 {¶ 29} The facts of the instant matter are not so clearcut. Decedent, Andrew Anderson, was born in California and attended elementary and high school in Monroe County, Ohio. Upon graduation, decedent and his brother Tom moved to California for some time. Thereafter, both eventually moved to North Carolina looking for work. Decedent moved there in 1995 or 1996 with his then girlfriend, Lori, whom he later married. Throughout this time, decedent's mother, Martha, continued to reside in Monroe County, Ohio.
 {¶ 30} Sometime later, decedent suffered certain health problems and was unable to work. (Hearing Tr., pp. 133-137, 149.)
 {¶ 31} On July 1, 2002, Martha suffered a stroke in Ohio. Upon being released from the hospital, she went to North Carolina to stay with her sons and their respective families during her recovery. After some time, Martha wished to return to Ohio. Thus, Andrew drove his mother, wife, daughter, and dog to the family home and farm in Monroe County, Ohio. They packed their family SUV with some of their personal belongings, and they left their trailer and other personal possessions in North Carolina. (Hearing Tr., p. 138.)
 {¶ 32} Once in Ohio, the decedent secured government assistance and food stamps to help with the care of his minor child, who was enrolled in Skyvue Elementary School in Monroe County as of August, 2001. Decedent's daughter also belonged to the Church of Christ in Ohio. She attended both until her father died on January 10, 2003. (Hearing Tr., pp. 141-142.) *Page 10 
 {¶ 33} While in Ohio, Appellant treated with an Ohio doctor, Dr. Geoffrey Snyder, M.D. Snyder testified at the hearing that decedent advised him that he was in Ohio temporarily to care for a family member. Specifically, Snyder said decedent was to be in Ohio for a period of two to four months. Decedent's primary care physician was located in North Carolina. (Hearing Tr., pp. 10-13.)
 {¶ 34} The evidence also revealed that Andrew did not vote in Ohio in the November, 2002, general election. He died intestate in Monroe County, Ohio on January 10, 2003. His death notice was published in theBeacon, an Ohio paper. Decedent's wife, Lori, did not take part in the arrangement or payment for her husband's funeral. (Hearing Tr., pp. 144, 145, 160.)
 {¶ 35} Lori's grandmother, Eleanor Helmick, also resided in Monroe County, Ohio. Eleanor testified at the hearing that Andrew advised her that he was here to care for his mother and that when she was well enough, they were going to return to North Carolina. However, upon his death, Lori went to California with her mother and daughter. They never went back to North Carolina. According to Eleanor, Lori had a continuing substance abuse problem and sought rehabilitation in California after Andrew's death. (Hearing Tr., pp. 26, 35-36, 38, 145-146.)
 {¶ 36} The decedent's brother, Thomas Anderson, also testified at the hearing. Thomas stated that Andrew did not vote and that the two frequently moved without filling out change of address forms.
 {¶ 37} Upon coming to Ohio to care for their mother, Thomas said that Andrew told him they were not going back to North Carolina and that he wanted Thomas to *Page 11 
sell his trailer. He gave Thomas the key and the deed. Thomas also said that Andrew did not have any bank accounts in North Carolina, that decedent was in bad financial shape, and that their mother was financially assisting his family. (Hearing Tr., pp. 78, 81, 86, 96.)
 {¶ 38} On cross-examination, however, it was brought out that Thomas had previously stated at his deposition that Andrew had bank accounts, but Thomas was unsure at which bank. Additionally, Thomas did not have a power of attorney to sell the decedent's property, and he never contracted with a realtor for the sale. (Hearing Tr., pp. 117-118.)
 {¶ 39} Thomas also explained that decedent wanted his North Carolina neighbors to know that he was coming back as soon as possible so his trailer would not get broken into or vandalized. At one time, Thomas was supposed to take decedent some of his tools and a boat motor to him in Ohio, but he never did. (Hearing Tr., pp. 101, 105.)
 {¶ 40} Neither Andrew nor Lori returned to North Carolina after they arrived in Ohio, and Lori never contacted Thomas about the trailer after Andrew's death. Further, decedent did not have any attorneys in North Carolina and an estate was never opened for him there. (Hearing Tr., pp. 103-104, 114.)
 {¶ 41} Thomas also said that Andrew and Lori had discussed building a small house on property in Ohio that Lori had inherited. (Hearing Tr., pp. 109-110.)
 {¶ 42} Lori testified in her deposition that her mother-in-law stayed with them for several weeks in North Carolina while recovering from her stroke. However, since *Page 12 
their trailer was small, they all went to Ohio to stay and take care of her. They left after their daughter attended the first day of school in North Carolina on August 15, 2002. They advised their North Carolina friends that they were only going to Ohio temporarily. They took one of their dogs with them, but they left their other dog and rabbit with a neighbor. Another neighbor was checking on their trailer and forwarding their mail. (Anderson Depo., pp. 78, 118.)
 {¶ 43} Their family car, a Toyota 4Runner was licensed and registered in North Carolina. They left most of their belongings in North Carolina since they planned to go back. They did not change their mailing address to Ohio. However, once in Ohio, decedent applied for disability benefits in Ohio, and he had his medical care transferred to Ohio. They stayed with decedent's mother in Ohio until Andrew's death. (Anderson Depo., pp. 42, 64, 67, 68, 70.)
 {¶ 44} In addition, once in Ohio, Lori was employed as a home health aide for the decedent's foster sister who was residing with them at the time. Lori received an Ohio W-2 form for the year 2002. (Anderson Depo., p. 81, Exh. 8.)
 {¶ 45} After her husband's death on January 10, 2003, she took no action to open an estate in Ohio or elsewhere. Although she paid off their North Carolina property and she considers it hers, she has never returned there. Decedent's death certificate identifies his residence at the time of his death as Monroe County, Ohio. (Anderson Depo., pp. 17, 38, Exh. 8.)
 {¶ 46} When asked about their stay in Ohio, Lori indicated that their stay was basically temporary, but decedent's mother, "wanted us to continue living there but *Page 13 
we didn't want to. We wanted to go back eventually [to North Carolina] but she was ill so we stayed." (Anderson Depo., p. 59.)
 {¶ 47} Based on the foregoing evidence, the probate court determined that the decedent was a Monroe County, Ohio resident based on his stay with his mother from approximately August 16, 2002 through January 10, 2003. Although the testimony reveals that decedent and his family did not likely intend to stay in Ohio indefinitely, it is clear that they had no current intentions of returning to North Carolina at the time of his death. Instead, the testimony and evidence support the trial court's decision that decedent and his family were residing in Ohio for an unspecified period of time.
 {¶ 48} Although their family vehicle was licensed in North Carolina, their family home was in North Carolina, and some of their personal possessions remained in North Carolina, they had no fixed time to return to North Carolina. In the meantime, Lori earned an income in Ohio, their daughter attended school and church in Ohio, and decedent collected certain Ohio benefits. Further, upon decedent's death, no estate was opened in North Carolina and decedent's death certificate identifies his residence as Monroe County, Ohio.
 {¶ 49} Based on the foregoing, the evidence supports the trial court's decision that decedent was an Ohio resident at the time of his death. R.C. § 2113.01. Accordingly, the trial court's decision authorizing Appellee's application to administer the decedent's estate is affirmed, and Appellant's assignments of error on appeal are overruled. *Page 14 
 Donofrio, J., concurs. DeGenaro, P.J., concurs. *Page 1