WALSH, Appellant,

v.

WALSH, Appellee.

[Cite as *Walsh v. Walsh* (2001), 146 Ohio App.3d 48.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

Decided Sept. 24, 2001.

*Davida J. Dodson* and *Ashtabula County Legal Aid,* for appellant.

*NcNair & Bobulsky Co., L.P.A.,* and *William P. Bobulsky,* for appellee.

GRENDELL, Judge.

This is an accelerated calendar appeal. Yeny C. Walsh ("appellant") appeals the September 28, 2000 factual findings and conclusions of law by the Ashtabula County Court of Common Pleas. In particular, appellant appeals the trial court's conclusion that the Honduras adoption of Andres A. Walsh ("Andres") by Andrew J. Walsh ("appellee") was not recognized in Ohio because it lacked the required verification and approval by the Immigration and Naturalization Services ("INS"). For the following reasons, we affirm the judgment of the lower court.

Appellant and appellee were married on June 6, 1996, in Honduras. Previously, on June 3, 1996, appellee completed a "certification of birth certificate" in Honduras, regarding appellant's son, Andres, born August 14, 1995. Consequently, Andres's Honduran birth certificate listed appellee as Andres's father. Appellee is *not* the biological father of Andres.[1] Appellant entered the United States on March 19, 1997, and Andres entered the United States in November

---

1. Appellant's testimony was inconsistent as to the identity of Andres's biological father. During the 1998 support hearing, appellant testified that Andres's biological father was Andres Iella, whom she named her son after, but did not give her son his last name. During the April 27, 2000 hearing, appellant testified that she did not know the identity of Andres's biological father.

1997. The parties separated in January 1998. No children were born of their marriage. On March 3, 1999, appellant filed an action for divorce, requesting spousal and child support.

On June 4, 1999, the trial court entered a temporary order for child and spousal support, ordering appellee to pay $325 per month in spousal support, $500 per month in child support, and to provide medical health care insurance for appellant and Andres. In a judgment entry filed October 27, 1999, the trial court granted appellant a divorce on the ground of incompatibility, canceled the spousal support, reduced the child support to $400 per month until further order, and continued the medical insurance for Andres until further order. Two issues remained before the court: whether appellee adopted Andres and the division of any marital property.

On April 27, 2000, a hearing commenced to address the remaining issues. This hearing was continued on June 28, 2000. Various exhibits were admitted into evidence by both sides, including, among other things, Andres's birth certificate, an affidavit by a Honduran attorney, and an authenticated copy of a birth certificate certification by the consul of the United States Embassy. The trial court ordered the parties to submit written closing arguments. In appellant's closing arguments, appellant contended that appellee had a duty to support Andres because he was the legal father under the laws of Honduras. Appellant further asserted that appellee had a duty to support her and Andres for at least ten years because appellee petitioned the United States to admit them into this country. Appellee did not submit written closing arguments.

On August 30, 2000, in a judgment entry, as to the issue of whether appellee adopted Andres, the trial court stated that appellant provided a birth certificate showing that appellee registered himself as the father of Andres and a sworn statement by a Honduran attorney, stating that according to the books of the Honduras National Registry, appellee adopted Andres. The trial court stated that R.C. 3107.18(A), effective September 1996, required a foreign adoption to be verified and approved by the INS. Consequently, the trial court determined that appellee's Honduran adoption of Andres could not be recognized in Ohio due to the lack of verification and approval by the INS. The trial court vacated the child support order.[2] Taking into consideration the fact that appellee had already paid $5,769.03 in child support and $877.72 in spousal support and had an arrearage of $192 in child support and $422.28 in spousal support, the trial court vacated the

---

**2.** As to the issue of spousal support, from which no arguments are raised in the instant appeal, the trial court stated that appellant admitted into evidence an INS affidavit of support, which indicated that appellee would be responsible for supporting appellant until March 19, 2000. The trial court added that appellant admitted that, during the nineteen months of their marriage, they resided together as husband and wife for only six or seven months.

arrearages and overruled appellant's motion for spousal support, concluding that the marriage was of short duration with the parties cohabitating for seven months or less.

On September 6, 2000, pursuant to Civ.R. 52, appellant filed a request for findings of fact and conclusions of law. Particularly, appellant requested conclusions of law regarding the establishment of a parent-child relationship between appellee and Andres through a voluntary acknowledgement of paternity under the laws of Honduras and "R.C. 3112.02" (*sic* R.C. 3111.02), but not a formal adoption. On September 28, 2000, the trial court made the following factual findings and conclusions of law. The trial court found that the parties were married June 6, 1996, in Honduras; they separated in January 1998; they cohabitated for six to seven months; at the time of the filing of the divorce, appellant was pregnant with her daughter, whose father is appellant's present husband; appellee has paid $5,769.03 in child support and $877.72 in spousal support; and appellee paid for appellant's travel expenses to visit her family in Honduras. As to the trial court's conclusions of law, the trial court concluded that appellee is not the biological father of Andres, R.C. 3107.18(A) requires that a foreign adoption to be approved and verified by the INS in order to be recognized in Ohio, the Honduran adoption of Andres by appellee cannot be recognized in Ohio, and appellant is not entitled to any spousal support due to the short duration of the marriage and short time of cohabitation.

On October 27, 2000, appellant filed a timely notice of appeal, asserting three assignments of error. Due to the fact that appellant's first and third assignments of error contain overlapping arguments, they will be reviewed collectively.

In appellant's first assignment of error, appellant contends, while it may be true that INS did not verify and approve the adoption of Andres by appellee, the trial court erred in applying R.C. 3107.18(A) because appellant is not claiming that Andres was adopted. Rather, appellee acknowledged paternity under Honduran law and assumed the paternal duty of support, making this case an acknowledgement of paternity.

In appellant's third assignment of error, appellant contends that the trial court failed to apply R.C. 5101.314(A)(1) and R.C. 3111.02 because this case involved a registration of parentage rather than an adoption. Appellant avers that R.C. 5101.314 allows an individual to acknowledge paternity, and, after one year, the determination cannot be set aside.[3] Appellant opines that it does not matter that the individual declaring paternity is not the biological father. Finally, appellant

---

**3.** As to appellant's arguments in her third assignment of error, concerning the application of R.C. 5101.314 and R.C. 5101.31, these statutes were repealed, effective March 22, 2001. Nonetheless, Chapter 3111 of the Revised Code addresses issues of paternity and parentage.

adds that the trial court's decision is against the manifest weight of the evidence because the trial court failed to take into consideration the self-authenticating documents establishing parentage under Honduran law.

First, we must set out the appropriate standard of review. When reviewing a trial court's determination in a domestic relations case, an "abuse of discretion" standard is applied. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028; see, also, *Smith v. Smith* (Dec. 22, 2000), Lake App. No. 99–L–123, unreported, 2000 WL 1876639. A trial court's decision in a domestic relations matter should not be disturbed on appeal unless the decision involves more than an error of judgment, meaning the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

Before addressing appellant's assignments of error, it is necessary to make the following observations concerning appellant's argument that she is *not* claiming that appellee adopted Andres. Appellant's complaint for divorce, filed March 3, 1999, stated that appellee adopted Andres in Honduras on June 3, 1996. Additionally, during the April 27, 2000 hearing, upon being asked whether she agreed that there was never an adoption by appellee, appellant testified, "Well, I thought it was an adoption." Appellant also admitted into evidence an affidavit by a Honduran attorney, who stated that appellee adopted Andres on June 3, 1996, according to the books of the National Registry of the People, certificate 0801–1996–09005, page 86, volume 2513, signed and sealed by the Municipal Civil Registrar of the Central District Municipality, attesting to its occurrence. Appellant also admitted into evidence a document titled "National Registry of the People" "Birth Certificate Certification," authenticated by the consul to the United States Embassy, stating that on June 3, 1996, appellant appeared "in court, or before a judge" to register a birth. Additionally, although appellee's testimony at the June 28, 2000 hearing indicated that he did not seek to be Andres's adoptive father, but his "father through marriage" or "stepfather," during the April 27, 2000 hearing, appellee acknowledged that on June 3, 1996, he appeared before a Honduran government official and signed a document indicating that he was Andres's father. Appellee also testified that he was aware that his actions would result in a birth certificate showing him as the father of Andres.

R.C. 3107.18 specifically deals with the recognition of decrees from outside Ohio, foreign-born children, and the issuance of foreign birth records. In particular, R.C. 3107.18(A) provides:

"Except when giving effect to such a decree would violate the public policy of this state, a court decree terminating the relationship of a parent and child, or establishing the relationship by adoption, issued pursuant to due process of law

by a court of any jurisdiction outside this state, whether within or outside the United States, shall be recognized in this state, and the rights and obligations of the parties as to all matters within the jurisdiction of this state, including, without limitation, those matters specified in section 3107.15 of the Revised Code, shall be determined as though the decree were issued by a court of this state. *A decree or certificate of adoption that is issued under the laws of a foreign country and that is verified and approved by the immigration and naturalization service of the United States shall be recognized in this state.* * * * " (Emphasis added.)

The Supreme Court of Ohio has stated that "the recognition and effectiveness of a foreign adoption decree are subject to the condition that the decree *not* be repugnant to the laws of Ohio." (Emphasis added.) *State ex rel. Smith v. Smith* (1996), 75 Ohio St.3d 418, 420, 662 N.E.2d 366. R.C. 3107.18(A) expressly sets out the requirement that, in order for a foreign decree or adoption to be recognized in Ohio, it must be verified and approved by the INS. In the case *sub judice,* there is no evidence demonstrating that appellee's registration of Andres's birth or adoption was verified and approved by the INS. As such, the trial court did not abuse its discretion in determining that the Honduran adoption of Andres by appellee was not recognized in Ohio.

██ Next, as to appellant's argument that R.C. 3111.02 is applicable because this case is a registration of parentage rather than an adoption, R.C. 3111.02 provides:

"(A) * * * The parent and child relationship between a child and the *natural father of the child* may be established by an acknowledgment of paternity as provided in sections 3111.20 to 3111.35 of the Revised Code, and pursuant to sections 3111.01 to 3111.18 or 3111.38 to 3111.54 of the Revised Code. The parent and child relationship between a child and *the adoptive parent of the child* may be established by proof of adoption or pursuant to Chapter 3107. of the Revised Code.

"(B) A court that is determining a parent and child relationship pursuant to this chapter shall give *full faith and credit to a parentage determination made under the laws of this state or another state* * * *." (Emphasis added.)

Since appellee is not the natural father of Andres, the first part of R.C. 3111.02(A), pertaining to the "natural father of the child," is not applicable in this case. Thus, we must look to the second part of R.C. 3111.02(A), which provides for the establishment of a parent and child relationship between an adoptive parent and a child. The latter part of R.C. 3111.02(A) directs us to Chapter 3107 of the Revised Code. As stated above, R.C. 3107.18 specifically deals with the recognition of decrees from outside Ohio, foreign-born children, and the issuance of foreign birth records. R.C. 3107.18(A) expressly requires a foreign decree or

foreign adoption to be verified and approved by the INS in order for Ohio law to recognize it. Moreover, R.C. 3111.02(B) provides that a court must give full faith and credit to a parentage determination made under Ohio law or the law of another state.

Although appellee testified that his reasons for registering himself as Andres's father was to obtain a birth certificate so that a passport could be issued to bring Andres to the United States and for Andres to obtain medical care in Honduras, appellee acknowledged that he was aware that his actions would result in a birth certificate being issued showing him as the father of Andres. Despite the evidence and testimony indicating that appellee adopted Andres and registered Andres's birth, Ohio law expressly prohibits recognition of appellee's Honduran adoption and registration of Andres's birth without the requisite verification and approval by the INS. The trial court did not abuse its discretion.

Next we address appellant's argument that the trial court's decision is against the manifest weight of the evidence because the trial court failed to take into consideration the self-authenticating documents, ostensibly establishing parentage under Honduran law. Upon review, judgments supported by some competent and credible evidence will not be reversed as being contrary to the manifest weight of the evidence. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154. The Supreme Court of Ohio has stated that "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 45–46, 560 N.E.2d 765, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. A reviewing court must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts, and in the event that the evidence is susceptible of more than one interpretation, a reviewing court must construe it consistently with the lower court's judgment. *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533.

Contrary to appellant's argument, the trial court's judgment entry made reference to appellant's exhibits admitted into evidence. Specifically, the August 30, 2000 judgment entry stated that appellant provided, in support of her position, a birth certificate and a certification of the birth certificate where appellee registered himself as Andres's father. The trial court added that a sworn statement by a Honduran attorney declared that, according to the books of the National Registry of the People, appellee adopted Andres on June 3, 1996, in Honduras. The trial court also made reference to appellant's other exhibits such as the INS document entitled "Petition for Alien Relative" and an affidavit of

support for appellant. The trial court's decision is not against the manifest weight of the evidence, since some competent and credible evidence supports the trial court's decision. For the reasons stated, appellant's first and third assignments of error are without merit.

In appellant's second assignment of error, appellant asserts that, while it is well settled that the rules of comity are discretionary, states are free to recognize the validity of certain judicial decrees of foreign governments when they are found valid under the laws of the foreign state and harmonious with the laws of the forum state. Appellant argues that the trial court erred in failing to recognize the principle of comity because the legal procedure in Honduras, concerning registering paternity, is almost identical to that in Ohio and does not interfere with the principles and morals in Ohio. Appellant posits the trial court's decision interferes with the policy of the United States to maintain a favorable relationship with Honduras.

Section 1, Article IV of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Full faith and credit does not operate between Honduras and the United States; however, if they elect to do so, the states are empowered to recognize the validity of a judicial decree by a foreign country when such decree is found to be valid under the laws of that foreign country and when recognition of that decree is harmonious with the state's laws. *Yoder v. Yoder* (1970), 24 Ohio App.2d 71, 72, 53 O.O.2d 193, 263 N.E.2d 913; see, also, R.C. 3107.18(A). "Comity" refers to a state's recognition of a foreign decree; however, such recognition is a matter of courtesy and not a matter of right. *State ex rel. Lee v. Trumbull Cty. Probate Court* (1998), 83 Ohio St.3d 369, 374, 700 N.E.2d 4. As explained in the analysis of appellant's first and third assignments of error, pursuant to R.C. 3107.18(A), the Honduran adoption and registration of birth of Andres cannot be recognized in Ohio due to the lack of verification and approval by the INS. Clearly, the trial court's decision not to recognize the Honduran adoption cannot be viewed as unreasonable, arbitrary, or unconscionable. Appellant's second assignment of error is without merit.

For the forgoing reasons, appellant's first, second, and third assignments of error are without merit. The judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

WILLIAM M. O'NEILL, P.J., and NADER, J., concur.