JOURNAL ENTRY AND OPINION
{¶ 1} The appellant ("Husband"), Husam Alsamman, appeals from the judgment of the Court of Common Pleas, Domestic Relations Division, which granted a divorce to the appellee ("Wife"), Hanadi Rahawangi, claiming the trial court had no jurisdiction to hear the case. After reviewing the record and for the reasons set forth below, we affirm the decision of the trial court.
 {¶ 2} Husband and Wife were married on May 15, 1991 in Damascus, Syria; both are Syrian citizens. Two weeks after they were married, Husband and Wife moved to Cleveland, Ohio in order for Husband to complete his medical training and receive his board certification in anesthesiology. Husband and Wife traveled to the United States on J-1 and J-2 visas respectively. Wife claims she has not been back to Syria since her wedding and has no intention of returning.
 {¶ 3} While living in Cleveland, Ohio, Husband and Wife had their first child, Lynne Samman, born March 17, 1994. Shortly thereafter, Husband received a fellowship at U.C.L.A., and they moved to Los Angeles, California. While in California, Husband and wife had their second child, Tarek Samman, born September 18, 1995. Both children are United States citizens. After Husband completed his fellowship at U.C.L.A., the family moved back to Cleveland, Ohio.
 {¶ 4} In October 1997, the family returned to Riyadh, Saudi Arabia, where Husband found employment at King Faisal's Specialist Hospital. In early February 1999, Husband and Wife fought. Husband ordered Wife to take the children and leave his home in Saudi Arabia and return to Syria. Wife refused to do so because she believed that Husband had damaged her honor by making false statements about her to people living in Syria. Wife instead took her children and went to her sister's home in Kuwait.
 {¶ 5} On February 19, 1999, Husband filed for divorce in the Spiritual Court of Syria. Wife had no notice of those divorce proceedings and did not participate. Husband did not personally attend the proceedings, but was represented by a family member. In March 1999, while staying with her sister in Kuwait, Wife obtained a B-2 tourist visa and returned to the United States with her children. The Syrian divorce became official on April 24, 1999.
 {¶ 6} During this time, Husband kept in contact with Wife and knew she had gone to the United States; however, Husband provided no financial assistance to Wife or his children. Wife testified that Husband did not tell her about the Syrian divorce or about the fact that he had remarried.
 {¶ 7} Husband married another woman in August 1999. Husband remained in Saudi Arabia until July 2000; thereafter, Husband and his new wife returned to southern California and set up a medical clinic known as Samman Medical Corporation. Husband and his new wife had a child named Samia; they currently reside in Alpine, California.
 {¶ 8} Wife has been living in the Cleveland area since June 1999. She currently resides in Broadview Heights. In 2001, Wife applied to the Immigration and Naturalization Service for political asylum. At the same time, Wife also received a work permit. In February 2002, the Immigration and Naturalization Service conducted an interview with Wife. Wife was told that she did not have to renew her B-2 Visa anymore; however, the case is still pending as to whether asylum will be granted to her. Wife currently works in the billing department for a cardiologist.
 {¶ 9} On October 27, 1999, Wife filed for legal separation from Husband in the domestic relations trial court (Case Number D-270364). The case was assigned to the docket of the Honorable Kathleen O'Malley. On April 12, 2000, the trial court dismissed the case without prejudice. No appeal was taken.
 {¶ 10} In March 2000, Husband filed a writ of habeas corpus in the Cuyahoga County Court of Common Pleas, Juvenile Division, to have the children returned to him. The action was dismissed by the trial court on the basis that Syria was not a signatory nation of the Hague Convention; therefore, the court lacked jurisdiction to hear the matter.
 {¶ 11} On April 17, 2000, Wife filed a complaint for divorce in the domestic relations trial court (Case Number D-273402). The case was assigned to the docket of the Honorable Anthony Russo. On May 26, 2000, Husband moved the trial court to dismiss the complaint based on the divorce decree obtained in Syria and also due to the fact that this case had been heard and dismissed previously by Judge Kathleen O'Malley; Husband's motion was denied by the trial court.
 {¶ 12} Trial in case number D-273402 began on April 30, 2002 and was concluded on May 7, 2002. On October 1, 2002, the trial court issued the judgment entry of divorce. On October 25, 2002, Husband appealed the judgment entry of divorce to this court (Case Number 81952). This court dismissed the appeal for lack of a final appealable order on July 10, 2003, holding the trial court failed to address the health care needs of the children in its judgment entry. On October 7, 2003, the trial court issued a nunc pro tunc judgment entry of divorce correcting the clerical mistake raised by this court.
 {¶ 13} Husband now brings this timely appeal alleging five assignments of error for review.
 {¶ 14} "I. The trial court erred in not dismissing the action brought by appellee because res judicata prevented appellee from relitigating the validity of a prior divorce proceeding that had been dismissed for lack of jurisdiction."
 {¶ 15} In his first assignment of error, the appellant claims the appellee is barred by the doctrine of res judicata from filing the instant complaint for divorce before Judge Russo because her previously filed complaint for legal separation had been already heard and dismissed by Judge O'Malley. We disagree.
 {¶ 16} The issue of whether the doctrine of res judicata is applicable is a question of law which appellate courts review de novo. Rohner Distributors v. Pantona (Apr. 8, 1999), Cuyahoga App. No. 75066.
 {¶ 17} The doctrine of res judicata applies if there is a valid, final judgment that is rendered upon the merits by a court of competent jurisdiction, which is conclusive of all rights, questions, and facts in issue of the parties. Grava v. ParkmanTwp., 73 Ohio St.3d 379, 1995-Ohio-331, 653 N.E.2d 226. If the doctrine applies, it bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. Id.
 {¶ 18} A review of the record indicates that the dismissal of the appellee's claim for legal separation was without prejudice and not on the merits. The journal entry of Judge O'Malley does not specifically state for what reasons the complaint for legal separation was dismissed. The appellant claims the trial court dismissed the complaint because it lacked subject matter jurisdiction, while the appellee claims the complaint was voluntarily dismissed because she could not perfect service of process on the appellant. Regardless of the trial court's reason for dismissing the complaint for legal separation, the dismissal was not on the merits. Furthermore, a complaint for legal separation and a complaint for divorce are two separate legal actions that would not be barred by the doctrine of res judicata.
 {¶ 19} Given the fact that the appellee's claim for legal separation was not dismissed on the merits and that she filed a distinct and separate complaint for divorce, we hold the doctrine of res judicata is not applicable to the instant claim; therefore, the appellant's first assignment of error is hereby overruled.
 {¶ 20} "II. The trial court lacks jurisdiction over a non resident alien traveling on a B-2 visitor visa for purposes of a divorce action in Ohio."
 {¶ 21} In his second assignment of error, the appellant claims the trial court lacked subject matter jurisdiction to hear the complaint for divorce because the appellee was a Syrian citizen visiting the United States on a B-2 visitor visa. The appellant specifically argues that the B-2 visitor visa only confers a "tourist" status on the appellee within the United States; therefore, the appellee's failure to obtain a Permanent Residency Card deprives the trial court of jurisdiction to hear her complaint for divorce because the appellee is not a permanent resident. We disagree.
 {¶ 22} R.C. 3105.03 states, "The plaintiff in actions for divorce and annulment shall have been a resident of the state at least six months immediately before filing the complaint."
 {¶ 23} "The word `residence' in R.C. 3105.03, means `domiciliary residence,' a concept which has two components: (1) an actual residence in the jurisdiction, and (2) an intention to make the state of jurisdiction a permanent home." Coleman v.Coleman (1972), 32 Ohio St.2d 155 at 162, 291 N.E.2d 530 at 535. The trial court must examine the surrounding facts and circumstances to determine whether the individual has the intention to remain in Ohio indefinitely. Id.
 {¶ 24} "Residence" imports an actual physical presence within the state. Franklin v. Franklin (1981), 5 Ohio App.3d 74,449 N.E.2d 457; see, also, Hager v. Hager (1992),79 Ohio App.3d 239, 243, 607 N.E.2d 63, 66. It signifies an abode or place of dwelling. Id.
 {¶ 25} "`Domicile' * * * conveys a fixed, permanent home. It is the place to which one intends to return and from which one has no present purpose to depart * * *. [It is] the relationship which the law creates between an individual and a particular locality * * *. A party's domicile usually coincides with his place of residence. However while an individual may have several residences, he can be domiciled in only one place at a given time. * * *." Hager, 79 Ohio App.3d 239, at 244,607 N.E.2d 63, at 66.
 {¶ 26} A person effectively changes her domicile when she actually abandons the first domicile, coupled with the intent not to return to it, and acquires a new domicile. Polakova v. Polak
(1995), 107 Ohio App.3d 745, 669 N.E.2d 498, citing, Winnard v.Winnard (1939), 62 Ohio App. 351, 23 N.E.2d 977.
 {¶ 27} In a divorce action, the burden of proof is on the plaintiff to prove domiciliary residence in the state by a preponderance of the evidence. Hager, 79 Ohio App.3d 239, at 243, 607 N.E.2d 63, at 66. Proof of the first component of the concept of domiciliary residence, i.e., actual residence in the state, is prima facie evidence of the second component, i.e., an intent to be domiciled there.
 {¶ 28} In the instant matter, it is undisputed that the appellee was a Syrian citizen. In May 1991, the appellee was married to the appellant in Syria; they then left Syria two weeks later to live in the United States. The appellant and appellee came to the United States on J-1 and J-2 visas, respectively. The appellant maintains a Syrian residence. While in the United States, the appellant and appellee had two children; both are American citizens. In October 1997, the family returned to Riyadh, Saudi Arabia, where the appellant found employment. In February 1999, the couple fought, and the appellant told the appellee to leave his home and take the children back to Syria. Instead of doing so, the appellee took the children to Kuwait, obtained a tourist visa, and returned to the United States.
 {¶ 29} The appellant married again in August 1999 and had another child. The appellant and his new wife moved to Alpine, California, where they currently reside.
 {¶ 30} Since June 1999, the appellee has been living with her children in Cleveland, Ohio. The appellee has applied to the Immigration and Naturalization Service for political asylum. The appellee also obtained a work permit and is employed in the billing department of a cardiologist. Appellee is also working towards obtaining a general education degree (GED). At trial, the appellee testified that she does not have any intention of returning to Syria and plans to make Cleveland, Ohio, her permanent home.
 {¶ 31} After reviewing the facts in this case, we find that the appellee has effectively changed her domiciliary residence from Damascus, Syria, to Cleveland, Ohio, even though she is here on a tourist visa. She has a physical residence in Broadview Heights, Ohio, and expressed her intention to remain permanently in Ohio by filing for political asylum with the Immigration and Naturalization Service. In February 2002, the Immigration and Naturalization Service conducted an interview with the appellee, and she was told that she did not have to renew her B-2 tourist visa; that issue is still pending.
 {¶ 32} Because the appellee has met the requirements of R.C.3105.03, and established her domiciliary residence by a preponderance of the evidence, we overrule the appellant's second assignment of error.
 {¶ 33} "III. The trial court should have been precluded from hearing the refiled case because it was not reassigned to the judge who originally was assigned by lot to hear the case."
 {¶ 34} In his third assignment of error, the appellant claims that the trial court erred in not reassigning the appellee's complaint for divorce to the docket of Judge Kathleen O'Malley. Appellant claims that because Judge O'Malley was originally assigned by lot to hear the parties' first case for legal separation, the complaint for divorce also should have been heard by her.
 {¶ 35} As discussed previously, a complaint for legal separation and a complaint for divorce are two separate and distinct legal actions; therefore, the complaint for divorce does not have to be assigned to the docket of the same judge that dismissed the complaint for legal separation. The appellant's third assignment of error is overruled.
 {¶ 36} "IV. The trial court erred in not enforcing the divorce decree between the parties from Syria on the basis of comity because enforcing the laws of the Syrian divorce decree was not and would not be contrary or repugnant to the laws of the United States and Ohio."
 {¶ 37} In his fourth assignment of error, the appellant claims the divorce decree obtained in Syria is controlling and dispositive of his marriage to the appellee; therefore, the trial court, through the doctrine of comity, should have been barred from rehearing the matter.
 {¶ 38} Comity refers to an Ohio court's recognition of a foreign decree and is a matter of courtesy rather than of right.State ex rel. Lee v. Trumbull Cty. Probate Court,83 Ohio St.3d 369, 374, 1998-Ohio-51, 700 N.E.2d 4; Walsh v. Walsh,146 Ohio App.3d 48, 2001-Ohio-4315, 764 N.E.2d 1103. "* * * [S]everal states of the United States are empowered, if they freely elect to do so, to recognize the validity of certain judicial decrees of foreign governments where they are found by the state of the forum to be valid under the law of the foreign state, and where such recognition is harmonious with the public policy of the forum state, taking into consideration all of the relevant facts of the particular case." Yoder v. Yoder (1970),24 Ohio App.2d 71, 72, 263 N.E.2d 913.
 {¶ 39} "This principle is frequently applied in divorce cases; a decree of divorce granted in one country by a court having jurisdiction to do so will be given full force and effect in another country by comity, not only as a decree determining status, but also with respect to an award of alimony and child support. The principle of comity, however, has several important exceptions and qualifications. A decree of divorce will not be recognized by comity where it was obtained by a procedure which denies due process of law in the real sense of the term, or was obtained by fraud, or where the divorce offends the public policy of the state in which recognition is sought, or where the foreign court lacked jurisdiction." Kalia v. Kalia,151 Ohio App.3d 145, 155, 2002-Ohio-7160, 783 N.E.2d 623.
 {¶ 40} In the instant matter, the trial court found and the record indicates that the appellee did not receive actual or constructive notice of the divorce proceedings in Syria. It is undisputed that Syria is not a signatory of the Hague Convention. The appellant sent notice of the divorce proceedings to the appellee's mother's house in Syria, with full knowledge that the appellee and the children were residing in the United States. The trial court found that this lack of due process fatally flawed the Syrian divorce proceeding and thus refused to uphold the Syrian divorce decree. We agree with the trial court's holding.
 {¶ 41} A decree of divorce will not be recognized by comity where it was obtained by a procedure which denies due process of law, i.e., the lack of service of process; therefore, the appellant's fourth assignment of error is overruled.
 {¶ 42} "V. The trial court's factual findings and its failure to admit evidence were contrary to the law and against the manifest weight of the evidence."
 {¶ 43} In his final assignment of error, the appellant claims the trial court's findings regarding the Syrian divorce proceedings, the appellee's nationality, and the court's failure to admit certain documentary evidence, amounted to a ruling which is against the manifest weight of the evidence.
 {¶ 44} In civil cases, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Moreover, evaluating evidence and assessing credibility are primarily for the trier of fact. Crull v. Maple Park Body Shop (1987),36 Ohio App.3d 153, 521 N.E.2d 1099. Thus, a reviewing court should not reverse a trial court's decision when it merely has a difference of opinion on questions of credibility or the weight of the evidence; rather, a trial court's decision should be overturned only when there is no competent and credible evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273.
 {¶ 45} First, the appellant claims that the trial court erred in its judgment entry for divorce by stating that the appellee is a Palestinian instead of a Syrian. Testimony in the record indicates that the appellee is, in fact, a Syrian citizen. Although the trial court erred by stating that the appellee was Palestinian, this error did not prejudice the appellant, nor did it create a manifest miscarriage of justice. Whether or not the appellee is Syrian or Palestinian, she is still a domiciliary resident of this state for jurisdictional purposes.
 {¶ 46} Second, the appellant claims the trial court mistakenly found that the appellee did not have actual or constructive notice of the Syrian divorce proceedings that began in February 1999. The appellant claims the trial court erred by finding that the appellee came back to the United States March 1, 1999. The appellant produced a witness, Ammar Almasalkhi, who testified that the appellee came to his home from Kuwait on April 9, 1999. Almasalkhi also testified that the appellee told him she and the appellant had been divorced. The appellant and Almasalkhi are both doctors and have been friends for years.
 {¶ 47} The trial court primarily determines questions of credibility and the weight given to evidence. There exists competent and credible evidence to indicate that the appellee had no actual and constructive notice of the Syrian divorce proceedings and came to the United States before the Syrian divorce was filed. The trial court's findings were not against the manifest weight of the evidence.
 {¶ 48} Last, the appellant claims the trial court excluded documentary evidence of the Syrian marriage decree and the Syrian divorce decree. The appellant claims these documents substantiated the fact that the parties were subject to the jurisdiction of the Syrian court.
 {¶ 49} A trial court's decision to exclude evidence is not grounds for reversal unless the record clearly demonstrates that the trial court abused its discretion and that the complaining party has suffered a material prejudice. Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrell-DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152,569 N.E.2d 875.
 {¶ 50} The trial court acknowledged and the parties stipulated that the appellant and appellee were married in a Syrian spiritual court. Contrary to the appellant's assertion, the Syrian marriage certificate was admitted into evidence. The trial court refused to admit into evidence the Syrian divorce decree and other Syrian post-judgment documents because the trial court held that the Syrian divorce proceedings violated the appellee's right to due process. The trial court refused to grant recognition of the decree through the doctrine of comity. We find the trial court did not abuse its discretion in excluding documentary evidence of the Syrian divorce decree.
 {¶ 51} After reviewing the record, we find that the trial court's judgment entry for divorce was not against the manifest weight of the evidence. The appellant's fifth assignment of error is hereby overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Rocco, J., concur.