[Cite as *Gupta v. Gupta*, 2013-Ohio-2203.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99005**

## NIYATI GUPTA

PLAINTIFF-APPELLEE

vs.

## VIVEK R. GUPTA, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-09-329401

**BEFORE:** Blackmon, J., Stewart A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 30, 2013

**ATTORNEY FOR APPELLANT**

Joyce E. Barrett
800 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Jonathan A. Rich
Victoria A. Glowacki
Zashin & Rich Co., L.P.A.
55 Public Square, 4th Floor
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Appellant Vivek R. Gupta ("Vivek") appeals the domestic relations court's decision to proceed with a trial and issue a final judgment entry of divorce to his wife, appellee, Niyati Gupta ("Niyati").   Vivek assigns nine errors for our review.[1]

{¶2}   Having reviewed the record and pertinent law, we affirm the domestic relations court's decision.   The apposite facts follow.

{¶3}   On February 15, 1983, Vivek and Niyati were married in India.  A year later, Niyati joined Vivek in the United States, where he was attending school.  Two children were born of the marriage, both of whom were emancipated at the time of the trial.

{¶4}   Niyati, age 50 at the time of trial, graduated from high school and attended college in Delhi, India, where she obtained a Bachelor of Science in Home Sciences in 1980.   In April 1982, Niyati obtained a Masters in Home Sciences from the University at Bardo, in India.

{¶5}    Vivek, age fifty-five at the time of trial, graduated from high school in India, then received a Bachelors in Engineering from IIT in India.   In 1983, Vivek obtained a Masters in Engineering from the University of Oklahoma. Subsequently, in 1989, Vivek obtained a Masters in Business Administration from Cleveland State University.   Later, in 1997, Vivek obtained an Executive MBA from Columbia University.

_____

[1]See appendix.

**{¶6}** For over 20 years, Vivek was employed as a consultant with AT Kearney, an international business consulting firm. Early in the marriage, Niyati worked part-time as a sales associate and later taught fashion design part-time at Kent State University. In 1988, Niyati stopped working to become the primary caretaker for the parties' then school-aged children.

**{¶7}** Vivek and Niyati maintained an upper class lifestyle for most of their marriage. Both of their children attended private college preparatory schools and both children graduated from the University of Pennsylvania. The family took exotic vacations around the world, had country club memberships, owned two homes in the United States, and, at the time of the trial, two apartments in India were under contract for purchase.

**{¶8}** In 2004, Vivek accepted an expatriate assignment in India to serve as the managing director of AT Kearney's India operations. After Vivek accepted the position, the parties continued to travel and see each other in the United States and India. On August 31, 2008, Vivek took an unpaid leave of absence from AT Kearney and later resigned to start his own consulting firm.

**{¶9}** In October 2008, Vivek filed for divorce from Niyati in the Family Court in Mumbai, India. On March 16, 2009, service was perfected on Niyati. On December 30, 2008, Niyati also filed for divorce from Vivek in Cuyahoga County, Ohio and service would later be perfected on Vivek.

{¶10} On August 10, 2009, Niyati filed a motion for support pendente lite and Vivek was ordered to pay temporary spousal support of $21,420 per month. In addition, Vivek was ordered to pay the mortgage, real estate taxes, and insurance on the homes in Ohio, make minimum payments on the credit cards and Key Bank line of credit, as well as maintain health insurance coverage for Niyati during the pendency of the action. Niyati would later petition the family court in India for interim maintenance.

{¶11} On December 17, 2009, the parties agreed to dismiss Niyati's complaint for divorce, to re-file it the same day, and to adopt the support order in the newly filed case. On January 22, 2010, Vivek filed a Civ.R. 75(N) motion to set aside the temporary support order and for a full hearing. Pending that hearing, Vivek and Niyati agreed to reduce the temporary support ordered from $21,420 to $4,000 per month.

{¶12} On March 11, 2010, Vivek filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio. In response, Niyati filed and was granted a relief from stay to allow the divorce action to proceed. On August 4, 2010, the trial court granted the bankruptcy court's trustee's motion to intervene in the divorce proceeding.

{¶13} After protracted and often contentious motion practices, a full hearing commenced on February 17, 2011 regarding Niyati's various motions to show cause and Vivek's Civ.R. 75(N) motion to set aside or modify the temporary support order. Vivek traveled from India for the hearing, but it was not concluded and was rescheduled to May 24, 2011.

**{¶14}** Over several days during May through July 2011, the magistrate heard testimony in the matter. At the close of the hearing, the magistrate found Vivek in contempt for his failure to pay temporary spousal support and also found that his arrears, computed as of May 25, 2011, was $431,104. The magistrate then scheduled the case for trial.

**{¶15}** On February 27, 2012, the scheduled date of trial, Vivek did not attend, although he had been ordered to appear. Instead, Vivek's counsel presented a letter from an attorney in India indicating that the Supreme Court of India had granted a Special Leave Petition (C) No. 6993 of 2012 to stay the proceedings in Ohio. Vivek's counsel moved the court to excuse her client's absence, but the motion was denied. Vivek's counsel then advised the magistrate she had been instructed not to participate in the trial, and then orally moved to withdraw as counsel.

**{¶16}** The magistrate denied the motion to withdraw as counsel and proceeded with the hearing. Vivek's counsel refused to make an opening statement, did not object to any testimony, and did not proffer any evidence. During the hearing, the magistrate recessed to allow Vivek's counsel to take a phone call from Vivek. After the recess, Vivek's counsel advised the magistrate that her client had instructed her not to participate and to withdraw from representation. Thereafter, the magistrate granted Vivek's counsel's motion to withdraw.

**{¶17}** The trial continued over the next three days without any participation from Vivek. The magistrate heard testimony from the bankruptcy trustee, Waldemar J.

Wojcik, from Niyati, from the parties' children, and the deposition testimony of a designated representative of AT Kearney, Vivek's former employer. The magistrate also heard testimony from Niyati's counsel, Jonathan Rich, regarding attorney fees.

{¶18} In addition, the magistrate heard testimony, via Skype, from an appraiser, Chandermohan Mehra, who had been hired to appraise the parties' apartment in Mumbai, India. Further, the magistrate heard testimony on Niyati's two motions for attorney fees, her motion in limine to prevent Vivek from putting on evidence, as well as her motion to show cause, and motion for sanctions.

{¶19} At the conclusion of the trial, the magistrate found, among other things, that Vivek's total temporary support arrearage had grown to $628,811, because he had failed to pay any of the support ordered. On April 12, 2012, the magistrate filed her decision. Vivek timely filed his objections and later filed supplemental objections. On September 18, 2012, the trial court granted in part and denied in part Vivek's objections, and issued a final judgment entry of divorce.

## Forum

{¶20} Where appropriate, we will address the assigned errors out of sequence.

{¶21} In the first assigned error, Vivek argues the trial court abused its discretion in proceeding with the trial despite the injunction issued by the Supreme Court of India prohibiting the parties from proceeding with the United States divorce action.

{¶22} As a general rule, appellate courts review the propriety of a trial court's determination in a domestic relations case for an abuse of discretion. *Kehoe v. Kehoe*,

8th Dist. No. 97357, 2012-Ohio-3357, 974 N.E.2d 1229, citing *Saari v. Saari*, 195 Ohio App.3d 444, 2011-Ohio-4710, 960 N.E.2d 539 (9th Dist.). Abuse of discretion is more than simply error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶23}** In the instant case, Vivek argues that the trial court should have honored the decree[2] from the Supreme Court of India to stay the trial, because his complaint for divorce was filed in India prior to Niyati initiating divorce proceedings in Ohio. Vivek also argues that service was perfected on Niyati prior to her perfecting service on him in her complaint for divorce. In short, the court in India had priority. For the sake of argument, we will assume there existed a stay order from the Supreme Court of India.

**{¶24}** Comity refers to an Ohio court's recognition of a foreign decree and is a matter of courtesy rather than of right. *Rahawangi v. Alsamman*, 8th Dist. No. 83643, 2004-Ohio-4083, citing *State ex rel. Lee v. Trumbull Cty. Probate Court*, 83 Ohio St.3d 369, 374, 1998-Ohio-51, 700 N.E.2d 4; *Walsh v. Walsh*, 146 Ohio App.3d 48, 2001-Ohio-4315, 764 N.E.2d 1103 (11th Dist.). This principle is frequently applied in divorce cases. *Kalia v. Kalia*, 151 Ohio App.3d 145,155, 2002-Ohio-7160, 783 N.E.2d 623 (11th Dist.).

---

[2] The evidence in the record established that the document presented to the trial court was a letter from Vivek's attorney in India that described a stay order. The order described was not presented and is not part of the record.

{¶25} Several states of the United States are empowered, if they freely elect to do so, to recognize the validity of certain judicial decrees of foreign governments where they are found by the state of the forum to be valid under the law of the foreign state, and where such recognition is harmonious with the public policy of the forum state, taking into consideration all the relevant facts of the particular case. *Rahawangi, supra*, citing *Yoder v. Yoder*, 24 Ohio App.2d 71, 72, 263 N.E.2d 913 (5th Dist.1970).

{¶26} Here, acknowledging that Vivek first filed his complaint for divorce in India and first perfected service on Niyati, we conclude, after considering all the relevant facts, that Ohio was a more convenient forum for the proceedings. The record reveals that after the parties married in India in 1983, Niyati joined Vivek in Ohio the following year and it became their home. The parties lived, worked, and raised their children in America. Even after Vivek accepted the expatriate assignment in India, Ohio continued to be the parties' home. Vivek's income was directly deposited into a joint account in Ohio and he was responsible for filing taxes in America.

{¶27} In addition, after Niyati filed her complaint for divorce and service was perfected, Vivek had his motion to dismiss Niyati's complaint denied. Vivek subsequently appeared for hearings, agreed to dismiss the first complaint and to re-file same, and stipulated that the temporary spousal support order would become part of the newly filed complaint.

{¶28} Thus, after almost three years of divorce proceedings in Ohio, albeit proceedings that the record reveals Vivek to be an unwilling participant, it was not an

abuse of discretion for the trial magistrate to disregard the purported order of stay from the Supreme Court of India. Accordingly, we overrule the first assigned error.

## Temporary Spousal Support Arrearage

{¶29} In the second assigned error, Vivek argues the trial court abused its discretion in finding that he had a total temporary spousal support arrearage of $616,481 as of March 2, 2012.

{¶30} Initially, we note that the record reveals that although Vivek was ordered to appear for trial, he did not attend. Further, as previously noted, Vivek instructed his counsel not to participate in the trial in any manner. Consequently, Vivek's counsel made no opening statement, made no objections to any testimony, and proffered no evidence. Vivek's decision not to participate in the trial after the magistrate declined to honor the decree of stay from the Supreme Court of India, is fatal to this assigned error and others that follow.

{¶31} A party's failure to object to a magistrate's decision in the trial court waives his right to appeal the matter. *Pletcher v. Pletcher*, 5th Dist. No. CT-2000-0022, 2000 Ohio App. LEXIS 6145 (Dec. 22, 2000), citing *Asad v. Asad*, 131 Ohio App.3d 654, 723 N.E.2d 203 (8th Dist.1999).

{¶32} The record reveals that Vivek had been ordered to pay temporary spousal support of $21,420 per month during the pendency of the divorce proceedings. Prior to trial, in an entry journalized on October 25, 2011, the trial court had found Vivek in contempt for failure to pay the ordered temporary spousal support and computed the

arrears as of May 25, 2011 at $431,104. At trial, Niyati, without objection, testified that Vivek had not paid any spousal support since the trial court's contempt finding in 2011.

**{¶33}** Consequently, because a little more than nine months had elapsed, the trial magistrate added $197,707 (9.23 months @ $21,420) to $431,104, Vivek's arrears as of May 25, 2011, for a total of $628,811. As previously discussed, Vivek offered no testimony to the contrary. As such, we find no abuse of discretion in the magistrate's finding that the trial court later adopted. Accordingly, we overrule the second assigned error.

## Duration of Marriage

**{¶34}** In the third assigned error, Vivek argues the trial court abused its discretion in its determination that the marriage ended on March 2, 2012, the day of the final divorce hearing.

**{¶35}** Trial courts possess broad discretion in choosing the appropriate marriage termination date for purposes of property valuation. *Soulsby v. Soulsby*, 4th Dist. No. 07CA1, 2008-Ohio-1019, citing *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). Thus, we will not disturb the termination of marriage date absent an abuse of discretion. *Id.* When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

**{¶36}** Under R.C. 3105.171(A)(2), "during the marriage" means whichever of the following is applicable:

**(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;**

**(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.**

{¶37} Thus, the court may presume the date of the final hearing for divorce is the appropriate termination date of the marriage unless the court determines that the application of such a date would be inequitable. *See Deacon v. Deacon*, 8th Dist. No. 91609, 2009-Ohio-2491, ¶ 19, citing *O'Brien v. O'Brien*, 8th Dist. No. 89615, 2008-Ohio-1098, ¶ 40, citing *Berish* at 321.

{¶38} In the instant case, we do not find that the trial court abused its discretion in determining the termination date of the marriage was March 2, 2012. The record indicates that after Vivek took the expatriate assignment in India, the parties continued to visit each other monthly, both in India and America. At trial, Niyati testified that they continued to visit each other until late 2008, when she visited India and discovered that another woman was living in their apartment in Mumbai.

{¶39} Niyati also testified that after confronting Vivek, she contacted their son, who flew to India to give her emotional support, and to talk with his father to determine if the marriage could survive. Niyati testified that after the three met, Vivek indicated that the marriage could not continue in the current manner. Vivek then left the apartment.

**{¶40}** Although the parties lived separately after they filed their respective complaints for divorce, in India and Ohio, their finances remained entangled throughout the divorce proceedings. We are cognizant that the matter took more than three years to be concluded, but the record indicates that much of the delay can substantially be attributed to Vivek's lack of cooperation. Vivek's lack of cooperation is clearly evident by his failure to appear for trial and his decision to instruct his counsel not to participate in the trial.

**{¶41}** Under the circumstances, we find no abuse of discretion in the trial court's determination that the marriage ended on the date of the final divorce hearing. Accordingly, we overrule the third assigned error.

## Division of Property

**{¶42}** In the sixth assigned error, Vivek argues the trial court erred in the division of property.

**{¶43}** Marital property includes property that is currently owned by either or both spouses and that was acquired by either or both of the spouses during the marriage. *See* R.C. 3105.171(A)(3)(a). Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 13 (3d Dist.).

**{¶44}** In dividing the parties' assets in a divorce action, the court starts with the presumption that an equal division of marital assets constitutes an equitable division of the property. *Kapadia v. Kapadia*, 8th Dist. No. 94456, 2011-Ohio-2255, ¶ 24; *Franklin*

*v. Franklin*, 10th Dist. No. 11AP-713, 2012-Ohio-1814, ¶ 3; R.C. 3105.171(C). The trial court must make written findings of fact that support the determination that the marital property has been equitably divided. *Franklin* at ¶ 3; R.C. 3105.171(G). The "trial court must indicate the basis for its division of the marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law." *Franklin* at ¶ 4.

{¶45} In the instant case, the court ordered that the division of marital property would be substantially equal. The court also factored in a lump sum payment to Niyati to cover Vivek's temporary spousal support arrearage and the award of attorney fees. The record includes a chart detailing the division of property, the values of the assets and the outstanding obligation. With the exception of the Cambridge Solutions stock and the value of an HDFC financial account that was awarded to Vivek, everything else was divided evenly between the parties.

{¶46} The record further reveals that in order to effect the lump sum payment of the temporary spousal support arrearage and the award of attorney fees, said sums were deducted from the half interest of assets awarded to Vivek. However, it is clear that the court divided the property substantially equally.

{¶47} Nonetheless, Vivek argues that certain property was not valued correctly. However, Vivek failed to proffer any evidence of alternate valuation, because he declined to participate in the trial. If a party fails to present sufficient evidence of valuation, they have presumptively waived their right to appeal the distribution of those assets since the

trial court can only make decisions based on the evidence presented and is not required to order submission of additional evidence. *Davis v. Davis*, 8th Dist. No. 82343, 2003-Ohio-4657, ¶ 18.

{¶48} Moreover, when a party fails to present evidence as to the value of an item, it is akin to an invited error and that party has waived the right to appeal in regard to that asset. *Tyler v. Tyler*, 8th Dist. No. 93124, 2010-Ohio-1428, ¶ 31. Consequently, Vivek is now barred from asking this court to review the values the court affixed to certain assets.

{¶49} Based on the foregoing, we find no abuse of discretion in the trial court's division of the property. Accordingly, we overrule the sixth assigned error.

## Tax Liabilities

{¶50} In the fourth assigned error, Vivek argues the trial court erred in finding that he committed financial misconduct and assessing as a separate debt all the tax liability for tax years 2006 through 2009.

{¶51} The property to be divided in a divorce proceeding includes not only the assets owned by the parties but also any debts incurred by the parties. *Marrero v. Marrero*, 9th Dist. No. 02CA008057, 2002-Ohio-4862, ¶ 43. Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Ketchum v. Ketchum*, 7th Dist. No. 2001 CO 60, 2003-Ohio-2559, ¶ 47.

{¶52} Additionally, if a party has engaged in financial misconduct, including the dissipation, concealment or nondisclosure of assets, the court may compensate the other

party with a distributive award or a greater share of marital assets. R.C. 3105.171(E)(4). *Blacklock v. Blacklock*, 2d Dist. No. 25157, 2012-Ohio-6040.

{¶53} In the instant case, the record indicates that Vivek failed to timely file income tax returns for 2006 through 2009. The court found that Vivek's then employer brought his failure to file to his attention, and referred him to the accounting firm of Deloitte and Touche to have them prepared free of charge. Vivek refused to have them prepared. As a result, he was faced with a tax bill in the amount of $1,851,097.47.

{¶54} Vivek attempted to have the tax bill discharged in bankruptcy court, but was unsuccessful. The bankruptcy trustee testified that Vivek indicated that he subsequently prepared the returns for the tax years in question. The trustee was unable to verify that the returns had been filed, but testified that if filed, it would result in a significant reduction in the tax bill.

{¶55} Here, the tax bill that resulted from Vivek's refusal to timely file four years of tax returns cannot be said to have been incurred for a valid marital purpose. Further, Vivek's refusal to prepare the returns was unnecessary, because his then employer would have paid to have them prepared. As such, Vivek dissipated marital assets by said refusal and is guilty of financial misconduct.

{¶56} Based on the foregoing, there was no abuse of discretion in allocating the resultant tax bill as Vivek's separate debt. Accordingly, we overrule the fourth assigned error.

### Bankruptcy Costs

**{¶57}** In the fifth assigned error, Vivek argues the trial court abused its discretion in allocating to him all the costs associated with the bankruptcy filing.

**{¶58}** In the previous assigned error, we discussed Vivek's unsuccessful attempt to get the tax bill discharged in bankruptcy. The bankruptcy trustees testified that Vivek would not be granted a discharge in bankruptcy due to his failure to cooperate and disclose assets at the time of filing, and that there was sufficient assets to pay the liabilities.

**{¶59}** The court specifically found that Vivek's voluntary and unilateral decision to file bankruptcy added an additional $32,411 in attorney fees for the bankruptcy trustee and another $13,000 in trustee commission.

**{¶60}** Again, the additional expenses incurred because of Vivek's decision to file bankruptcy cannot be said to have been incurred for a valid marital purpose. As such, there was no abuse of discretion in allocating the total cost of the bankruptcy filing to Vivek. Accordingly, we overrule the fifth assigned error.

## Spousal Support

**{¶61}** In the seventh assigned error, Vivek argues the trial court erred and abused its discretion in its award of spousal support.

**{¶62}** As a general matter, we review spousal support issues under an abuse of discretion standard. *See Dunagan v. Dunagan*, 8th Dist. No. 93678, 2010-Ohio-5232, ¶ 12. So long as the decision of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, we will not disturb it. *Neumann v.*

*Neumann*, 8th Dist. No. 96915, 2012-Ohio-591, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 66, 488 N.E.2d 857 (1986).

**{¶63}** In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18, *Robinson v. Robinson*, 8th Dist. No. 97933, 2012-Ohio-5414. The factors the trial court must consider include each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental, and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income due to a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). In addition, the trial court is free to consider any other factor that the court finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n).

**{¶64}** The trial court is not required to comment on each statutory factor; the record need only show that the court considered the statutory factors when making its award. *Neumann* at ¶ 17, citing *Carman v. Carman*, 109 Ohio App.3d 698, 703, 672 N.E.2d 1093 (12th Dist.1996). If the record reflects that the trial court considered the statutory factors and if the judgment contains detail sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award. *Daniels v. Daniels*, 10th Dist. No. 07AP-709, 2008 Ohio App. LEXIS 772 (Mar. 4, 2008), citing *Schoren v. Schoren*, 6th Dist. No. H-04-019, 2005-Ohio-2102.

**{¶65}** In this matter, the trial court, in pages 8-10 of its analysis, sufficiently addressed each of the factors set forth in R.C. 3105.18 in relation to the evidence presented at trial. The court noted that Vivek began his employment with AT Kearney in 1989 as a business consultant, and in 2004 was transferred to India to work as the managing director of AT Kearney's India operations.

**{¶66}** The court noted that in 2007, one year prior to filing for divorce, Vivek earned $1,790,628 and AT Kearney provided him with health, life, and personal liability insurance. Niyati testified that the majority of Vivek's living expenses in India including housing, automobiles, domestic staff, chauffeur, cook, food, and travel were reimbursed by his employer.

**{¶67}** In addition, the court found that on August 31, 2008, Vivek began a voluntary leave of absence from AT Kearney and that for tax year 2008, he earned $1,218,854 through the month of August. The court noted that Vivek could have returned to AT Kearney, but voluntarily left to pursue even more lucrative financial opportunities as detailed to his family members verbally and in written emails.

**{¶68}** Further, the court noted that it was equitable to impute to Vivek the earnings that were commensurate with that he actually earned during his most recent employment with AT Kearney. The court pointed out that it was precisely the earning from tax years 2007 and 2008 that formed the bases of the temporary spousal support. The court again noted that Vivek failed to appear or put forth any evidence that the ordered amount of temporary spousal support should be changed.

**{¶69}** The court noted that Niyati's earning ability and work history stood in stark contrast to Vivek's. The court stated that Niyati worked part-time for the first five years of the marriage as a sales associate and later worked part-time as a fashion design instructor at Kent State University, but has not worked outside the home since 1988. The court stated that the lost income production capacity that resulted from her marital responsibilities is immense, having stayed home to raise the parties' children. In this respect, the court noted that Niyati would be returning to the work force at age 50 and most likely would never be able to rehabilitate herself from the lost earning capacity occasioned by the marriage.

**{¶70}** The court also addressed the relative health of the parties and noted that Niyati's physical condition is complicated by what she characterizes as "frozen shoulders," initial stages of glaucoma and cataracts, sleep apnea, hyperthyroidism, severe arthritis, asthma, allergies, and carpel tunnel syndrome, as well as depression. Again, the court noted that Vivek had put forth no evidence regarding his physical or mental health.

**{¶71}** In accordance with R.C. 3105.18(C)(1)(e), (g), (i), (j), and (m), the court observed that the parties had been married for 29 years, enjoyed an affluent upper class life style, had substantial assets, interest, and dividends, and that Niyati contributed equally in attaining the marital assets. Pursuant to R.C. 3105.18(C)(1)(l), the court addressed the tax consequences, observing that the spousal support would be a deduction for Vivek and income for Niyati.

**{¶72}** Finally, pursuant to R.C. 3105.18(C)(2), the court found that Vivek and Niyati contributed equally to the production of the marital income. Based upon all of the foregoing, the trial court awarded Niyati $21,420 per month in spousal support for life, remarriage or cohabitation, or the death of Vivek.

**{¶73}** We conclude, the decision of the trial court is well supported in the record, and there is competent, credible evidence going to all of the statutory elements for establishing a spousal support order. Therefore, we find no abuse of discretion in connection with this award. Accordingly, we overrule the seventh assigned error.

### Attorney Fees

**{¶74}** In the eighth assigned error, Vivek argues the trial court abused its discretion in its award to Niyati of $100,000 for attorney fees.

**{¶75}** Our review of the award of attorney fees is limited to determining (1) whether the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion. *Neumann*, 8th Dist. No. 96915, 2012-Ohio-591, at ¶ 6, citing *Gourash v. Gourash*, 8th Dist. Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), and *Oatey v. Oatey*, 83 Ohio App.3d 251, 614 N.E.2d 1054 (8th Dist.1992).

**{¶76}** Pursuant to R.C. 3105.73(A), a court may award all or part of reasonable attorney fees and litigation expenses to either party if the court finds the award equitable. In determining whether such an award is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the

parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(B); *Mlakar v. Mlakar*, 8th Dist. No. 98194, 2013-Ohio-100.

**{¶77}** In the instant case, the trial court found that the matter was complicated by numerous factors: the international aspect, where Vivek initially filed for divorce in India; his bankruptcy case; ongoing discovery issues; his contempt findings; his failure to cooperate in the sale of real estate; and his refusal to attend court hearings as ordered by the court.

**{¶78}** The court also found that Niyati had to file a motion to compel because Vivek refused to answer questions at his deposition regarding his financial accounts and business dealings. In addition, the court found that Vivek's opposition of Niyati's motion to compel was not substantially justified.

**{¶79}** Here, the court findings indicates that Vivek's failure to cooperate greatly increased the cost of litigation. As such, under the circumstances, the award of attorney fees cannot be deemed unjust. Thus, we find no abuse of discretion in the trial court's decision. Accordingly, we overrule the eighth assigned error.

### Admission of Exhibits

**{¶80}** In the ninth assigned error, Vivek argues the trial court abused its discretion in the admission of certain exhibits into evidence.

**{¶81}** The decision to admit or exclude evidence lies in the sound discretion of the trial court. Absent an issue of law, this court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. *Wells v.*

*Wells*, 9th Dist. No. 25557, 2012-Ohio-1392, citing *Jones v. Jones*, 9th Dist. No. 25468, 2011-Ohio-4393, ¶ 7. When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748 (1993).

**{¶82}** In the instant case, although ordered to appear for trial, Vivek did not attend and instructed his counsel not to participate in the trial in any manner. Thus, Vivek's counsel made no opening statement, made no objections to any testimony, proffered no evidence, and did not object to the admission of any exhibits.

**{¶83}** Here, Vivek having made no objection to the admission of the exhibits, he has waived any challenge to the admission of this evidence on appeal, save plain error. *State v. May*, 3d Dist. No. 8-11-19, 2012-Ohio-5128. As previously stated, Vivek's decision not to appear for trial and instruct his counsel not to participate, is fatal. As such, we see no abuse of discretion in the trial court's decision to admit the exhibits into evidence. Accordingly, we overrule the ninth assigned error.

**{¶84}** Judgment affirmed.

It is ordered that appellee recover from appellant her costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
PATRICIA ANN BLACKMON, JUDGE

MELODY J. STEWART, A.J., and
MARY EILEEN KILBANE, J., CONCUR

## APPENDIX

### Assignments of Error

**I. The trial court erred and abused its discretion in proceeding with the trial in the absence of jurisdiction and where the Supreme Court of India had issued an injunction prohibiting appellant and appellee from proceeding with the U.S. divorce.**

**II. The trial court erred and abused its discretion in finding that the appellant had a total arrearage in temporary spousal support of $616,481.00 as of March 2, 2012.**

**III. The trial court erred and abused its discretion in its determination that the term "during the marriage" is the period from February 15, 1983 to March 2, 2012.**

**IV. The trial court erred and abused its discretion in finding that appellant committed financial misconduct and assessing as the separate debt of the appellant any and all tax liabilities resulting from the years 2006, 2007, 2008, and 2009.**

**V. The trial court erred and abused its discretion in assessing all of the bankruptcy costs to the appellant.**

**VI. The trial court erred and abused its discretion in the division of property.**

**VII. The trial court erred and abused its discretion in its award of spousal support.**

**VIII. The trial court erred and abused its discretion in its award to the appellee of $100,000.00 as and for attorney fees.**

**IX. The trial court erred and abused its discretion in admitting certain exhibits into evidence.**